No. 20,874.

HENRY A. MENKE, *Appellee,* v. FRANK A. HAUBER, doing business as the KANSAS CITY SECOND HAND BARREL COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

"FACTORY"—*Premises Where Barrels Are Made by Hand Power not a "Factory" under Workmen's Compensation Act.* Premises wherein no mechanical power is used, and wherein workmen are employed in making and repairing barrels, each workman using only his own tools, consisting of an adz and driver or hammer and nails, is not a "factory" within the meaning of section 9 of chapter 218 of the Laws of 1911 as amended by chapter 216 of the Laws of 1913, known as the workmen's compensation law, which defines "factory" as "any premises wherein power is used in manufacturing, making, altering, adapting" etc., articles for the purpose of trade or gain.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. McCAMISH, judge. Opinion filed November 11, 1916. Reversed.

*E. S. McAnany, Maurice L. Alden,* both of Kansas City, *Adrian F. Sherman,* and *Thad B. Landon,* both of Kansas City, Mo., for the appellant.

*J. K. Cubbison, William G. Holt,* and *H. C. Myers,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiff was injured while in the employ of the defendant, who was engaged in business as The Kansas City Second Hand Barrel Company. At that time the defendant had in his employ from ten to twenty men who were en-

gaged in the work of making and repairing barrels. No mechanical power was used in the plant. Each workman used his own tools, consisting of an adz and driver, or hammer, and nails. Plaintiff's injury was caused by a barrel falling upon him. The barrels were in piles of four, one on top of the other, and the top one fell over in some manner and struck the plaintiff. The action was brought to recover compensation under the workmen's compensation law. There was a judgment in favor of the plaintiff in the sum of $2088.

The sole contention of the defendant at the trial was that his business was not subject to the provisions of the compensation law, and the only question raised by the appeal is whether an enterprise such as defendant carried on in making and repairing barrels by hand, where no power or machinery is used, comes within the provisions of the compensation law.

The title of the act known as the compensation law is, "An Act to provide compensation for workmen injured in certain hazardous industries." Section 1, so far as applicable here, reads:

"If in any employment to which this act applies, personal injury by accident arising out of and in the course of employment is caused to a workman, his employer shall, subject as hereinafter mentioned, be liable to pay compensation to the workman in accordance with this act." (Laws 1911, ch. 218.)

The title of the act shows that it is not a general law, but was to apply to certain hazardous industries; section 1 of the act likewise indicates that the act was intended to apply only to certain employment deemed to be especially dangerous.

Section 6 (as amended by Laws 1913, ch. 216, § 2), reads:

"Application of the act. This act shall apply only to employment in the course of the employer's trade or business on, in or about a railway, factory, mine or quarry, electric, building or engineering work, laundry, natural gas plant, county and municipal work, and all employments wherein a process requiring the use of any dangerous explosive or inflammable materials is carried on, which is conducted for the purpose of business, trade or gain; each of which employments is hereby determined to be especially dangerous, in which from the nature, conditions or means of prosecution of the work therein, extraordinary risk to the life and limb of the workman engaged therein are inherent, necessary, or substantially unavoidable, and as to each of which employments it is deemed necessary to establish a new system of compensation for injuries to workmen. This act shall not apply in any case where the ac-

Menke v. Hauber.

cident occurred before this act takes·effect, and all rights which have accrued, by reason of any such accident, at the time of the publication of this act shall be saved the remedies now existing therefor, and the court shall have the same power as to them as if this act had not been enacted. Agricultural pursuits and employments incident thereto are hereby declared to be non-hazardous and exempt from the provisions of this act."

The act was passed, as every one knows, because there was a demand for it based upon the conviction that in certain inherently dangerous employments the common-law remedies afforded an employee for injuries were inadequate.

"In the enactment of the compensation law the legislature recognized that the common-law remedies for injuries sustained in certain hazardous industries were inadequate, unscientific and unjust and therefore a substitute was provided by which a more equitable adjustment of such loss could be made under a system which was intended largely to eliminate controversies and litigation and place the burden of accidental injuries incident to such employments upon the industries themselves, or rather upon the consumers of the products of such industries." (*McRoberts v. Zinc Co.*, 93 Kan. 364, 366, 144 Pac. 247.)

It is quite obvious that at the place where the plaintiff was employed when he received his injury there was no extra hazardous or dangerous situation which of itself would call for an application of the compensation law. The injuries to which he was subject by his employment were those likely to be encountered by a workman employed in any place where boxes are piled one above another, as in a shoe store, grocery or dry goods store, storage house or in a transfer business. If there were room for doubt about the question, it is settled by section 9 of the act, in which the legislature defines a factory in these words:

"(b) 'Factory' means any premises wherein power is used in manufacturing, making, altering, adapting, ornamenting, finishing, repairing or renovating any article or articles for the purpose of trade or gain or of the business carried on therein, including expressly any brick yard, meat-packing house, foundry, smelter, oil refinery, lime burning plant, steam heating plant, electric lighting plant, electric power plant, and water power plant, powder plant, blast furnace, paper mill, printing plant, flour mill, glass factory, cement plant, artificial gas plant, machine or repair shop, salt plant, and chemical manufacturing plant."

We think it is clear that by the word "power" the legislature did not intend to include hand power, but had reference to mechanical power. The plaintiff makes the contention that

before the court can so determine it must indulge in legisla-
tion. We do not think so. It is only necessary to use ordinary
common sense in order to arrive at the intent of the legisla-
ture. The context of the act shows that the word "power"
must necessarily have reference to energy developed by ma-
chinery. If hand power were intended to be included the legis-
lature would have omitted the use of the word "power" en-
tirely, and would have merely declared that "factory" means
any premises used in "manufacturing, making, altering," etc.
Besides, in this section the legislature specifically includes the
following industries:

"Any brick yard, meat-packing house, foundry, smelter, oil refinery,
lime burning plant, steam heating plant, electric lighting plant, electric
power plant, and water power plant, powder plant, blast furnace, paper
mill, printing plant, flour mill, glass factory, cement plant, artificial gas
plant, machine or repair shop, salt plant, and chemical manufacturing
plant."

We all know that every one of these industries uses in some
manner mechanical power, or there are in operation dangerous
machines such as saws, moving belts and revolving cylinders;
or there are present other conditions inherently dangerous to
the life and limb of the workman.

The case of *De la Gardelle v. Hampton Co.*, 153 N. Y. Supp.
162, cited in the defendant's brief, is somewhat analogous to
the present case. There, a person, who was employed as a
butcher at a hotel, was fatally injured by the slipping of a
knife with which he was boning a leg of mutton. A claim for
compensation was made by the widow under groups 30 and 33
of section 2 of the New York compensation act, which read:

"Group 30. Packing houses, abattoirs, manufacture or preparation
of meats, or meat products, or glue.

"Group 33. Canning or preparation of fruit, vegetables, fish, or food-
stuffs; pickle factories and sugar refineries."

It was held that the sections of the act enumerating and de-
fining hazardous employments could not be regarded as cover-
ing the employment in which the deceased was injured. In
the opinion it was said:

"Within the employments determined by the legislature to be
'hazardous,' and consequently designated by it as embraced within the
purview of the statute, the latter should be beneficially construed to
effectuate the legislative purpose; but it is no function of this court to

Menke v. Hauber.

extend by judicial determination the category of occupations entitled to the protection of the statute." (p. 163.)

This court has always recognized the obligation resting upon it to give to the compensation law a liberal construction in order to carry into effect the provisions of the legislature, but we have no right to extend its construction to cover enterprises and industries not within the scope and intent of the law. We think it very clear that the enterprise carried on by the defendant was not a factory within the meaning of the compensation law. The plaintiff cites the case of *Caspar v. Lewin,* 82 Kan. 604, 109 Pac. 657, where the court held that a junk yard, wherein railroad iron, old stoves, etc., were cut up into lengths, came within the definition of a manufacturing establishment as defined by the factory act imposing a duty to safeguard machinery. In that case the junk yard was equipped with machinery for operating "alligator" shears, which were used to cut scrap iron. Power was transmitted by a belt from a pulley on a line shaft to another pulley on the machine. It was held that the conversion of the raw material was accomplished by means of machinery especially designed for that purpose, and that the place came within the definition of a "manufacturing establishment" in the factory act. In the compensation act the legislature has defined what it means by a "factory" as "premises wherein power is used in manufacturing, making, altering, adapting," etc. The two cases are not in any respect the same.

The judgment will be reversed, with directions to enter judgment for the defendant.