No. 23,909.

LEROY A. CRAMER, *Appellee,* v. THE KANSAS CITY RAILWAYS COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*Release by Injured Workman—Misrepresentation of Matter of Law—May Furnish Ground for Relief.* Among the exceptions to the general rule that a misrepresentation of a matter of law will not furnish a basis for relief on the ground of fraud is where a mistake was induced or encouraged by the misrepresentations of the other party, who took advantage of the other's ignorance, and where misrepresentations involving a point of law were so intended and understood and amounted to an implied assertion that facts existed which justified the conclusion of law expressed.

2. SAME—*Release—Misrepresentation by Employer—Release Set Aside.* A release obtained from an injured workman under the compensation act by an agent of the employer, who told the workman that the company would pay him the amount he was entitled to recover under the compensation law, which was $350, when in fact he was entitled under the act to recover $2,150, there being no misunderstanding as to the extent of his injuries, will be set aside, the representation being considered as one not purely of law but to some extent a question of fact.

3. SAME. A workman employed under the compensation act lost three fingers of his right hand and the index finger was rendered useless. The compensation act fixes a schedule for injuries of this character, and the amount of the liability of the employer under the act can be ascertained by a mathematical computation to be $2,150. The employee of the defendant who had charge of the settlement of compensation cases informed plaintiff that the company was ready to settle with him for the amount he was entitled to recover under the compensation act and that the amount was $350, and obtained his signature to a release upon the payment of that sum. *Held,* because of the great disparity between the amount paid, and the amount the workman was entitled to under the compensation act, public policy will justify the setting aside of the release on the ground of fraud.

4. SAME—*Act Passed for Benefit of Employee, Employer and the Public.* The compensation act was not passed for the benefit only of the injured employee and the employer. Three parties are interested: the employee, the employer and the public. Public policy requires the courts to scrutinize carefully a release that is grossly inadequate, and which is obtained upon the representation of the employer that the lesser sum is the amount fixed by the compensation act, where it appears that the employee was ignorant of the amount he was entitled to recover for his injuries.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed December 9, 1922. Affirmed.

*E. S. McAnany, M. L. Alden, T. M. Van Cleave, O. L. Miller,* and *C. C. Glandon,* all of Kansas City, for the appellant.

*David F. Carson, James T. Cochran,* both of Kansas City, *Charles M. Blackmar,* and *Henry A. Bundschu,* both of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

PORTER, J.:  This is a compensation case. The plaintiff, while in the employ of the defendant, had his right hand caught in a valve gear, resulting in the loss of three of his fingers, which were cut off below the second joint; the index finger was made stiff and his hand was otherwise injured so as to render it permanently useless. He alleged in his petition that he made claim upon the defendant for compensation and that an attempted settlement was made by which he was paid the sum of $350; that he accepted the sum because of the defendant's promises to furnish him a lifetime job or position, but that defendant did not reëmploy him or furnish him a place to work, and that the sum paid was wholly inadequate to compensate him for his injuries. He alleged that the defendant by its agents obtained his signature to a written settlement or release by fraud, the representation being that it would not be necessary to insert in the release any consideration other than the amount of money they were paying him, and that because of his crippled condition they could not tell him just what work he could perform and for that reason it was not necessary to insert in the release a condition as to his employment. He asked for judgment for the amount allowed under the compensation law and offered to credit the $350 received.

After plaintiff's counsel had made his opening statement to the jury, the defendant moved for judgment on the ground that the statement showed that there was no fraud or misrepresentation which would in law authorize the setting aside of the release. Before the court ruled upon the defendant's motion, plaintiff, over ob-

jections, obtained leave and amended his petition by alleging that the defendant's agent who obtained the release informed him that $350 was all he could get under the compensation act; that plaintiff believed the statement, relied thereon and accepted the $350. Counsel then made a further opening statement to the jury setting forth the facts alleged in the amendment. The facts set forth in the amendment were testified to by the plaintiff on the trial. There was a verdict in favor of plaintiff for $1,800, after crediting the $350 received in the attempted settlement.

The sole question urged by the defendant is that a misrepresentation as to a matter of law is not a sufficient basis upon which to predicate fraud. The defendant relies upon decisions holding that the workmen's compensation act and amendments thereto recognize the legality of voluntary settlements and releases of a workman's claim for injuries, and that, in the absence of fraud or a mutual mistake, the release of such a claim upon a voluntary settlement will not be set aside on the ground of gross inadequacy of compensation. (*Odrowski v. Swift & Co.*, 99 Kan. 163, 162 Pac. 268; *Weathers v. Bridge Co.*, 99 *Kan.* 632, 162 Pac. 957; *Dotson v. Manufacturing Co.*, 102 Kan. 248, 169 Pac. 1136.) It is insisted, therefore, that the sole question is, Did the statement made by the defendant's agent to the plaintiff constitute such fraud as will invalidate the release? The defendant cites numerous authorities in support of the well-established proposition that ordinarily the rule is that a settlement will not be set aside because one of the parties did not understand its legal effect. The rule rests upon the fundamental assumption that persons of sound and mature mind are presumed to know the law. (2 Pomeroy's Equity Jurisprudence [3d ed.] § 842.) The defendant relies also upon the general rule that where there is no relation of confidence and trust such as imposes an obligation upon one of the parties to give full information to the other, "the latter cannot proceed blindly, omitting all inquiry and examination, and then complain that the other did not volunteer to give the information which he had." (12 C. J. 353.)

It is the contention that the only exception to the general rule is where there exists some relation of confidence or trust between the parties which imposes an obligation upon the one not to take advantage of the other and to give to the other full information. We think there are other exceptions to the general rule. In *Epp v. Hinton*, 91 Kan. 513, 138 Pac. 576, where the well-known rule was

recognized, that false representations with respect to the law of another state may be the basis of an action for damages on the ground of fraud, it was said in the opinion:

"The modern tendency—a wholesome one—is to restrict rather than extend the immunity of one who gains an advantage over another by purposely misleading him." (p. 515.)

In the notes to 26 C. J. 1207, 1208, cases are cited to the effect that misrepresentations of law are grounds for redress in particular cases or with reference to particular transactions. The particular transactions and cases are referred to again in the notes to 12 C. J. 353, under the title, "Compromise and Settlements." Among the exceptions recognized by Corpus Juris is a mistake of law where the opposite party was in some way instrumental in producing the result, and cases are cited holding that it is well settled that relief will be granted against a compromise "not made merely under the impression that the law is doubtful and uncertain, with a view of bringing peace, but made under an entire and thorough mistake of law, as for instance, where the agreement is made in ignorance of the existence of a right or title, for in such case the mistake may be deemed a mistake of fact as well as of law." (12 C. J. 352.) Other exceptions are that "under some circumstances, as where the party relies upon the superior knowledge of the opposite party, a false representation as to a matter of law may constitute fraud." (12 C. J. 349; see, also, "Contracts," 9 Cyc. 410; "Fraud," 20 Cyc. 24.)

In *Titus v. Rochester, etc., Ins. Co.,* 97 Ky. 567, 53 Am. St. Rep. 426, 427, 430, it was said:

"These charges being admitted, it seems to us that the case presented involves something more than an effort to obtain relief purely on the ground of a mistake of law, or mere ignorance on part of appellant as to his legal rights under the contract of insurance. It becomes, in addition to this, a case of actual fraud, where by fraudulent misrepresentations made for the purpose and with the intent to deceive, the known ignorance of one of the parties to the contract has been willfully taken advantage of, and he has thereby been induced to surrender a valid, subsisting right without consideration. It is true that the ignorance relied upon is an ignorance of law rather than of fact, and that this is not always, or perhaps generally, and when standing alone, available as a ground of relief against an executed contract, no matter how inequitable it may be. On this point the decisions of the courts of this country, as well as the English courts, are by no means uniform, but, in our opinion, the weight of authority and the decisions of this court would now forbid that a party, who, with full knowledge of the ignorance of the other contracting party, has not only encouraged that ignorance, and made it the more dense by his own false and fraudulent misrepresentations, but has willfully deceived

and led that other into a mistaken conception of his legal rights, should shield himself behind the general doctrine that a mere mistake of law affords no ground for relief.

"This view seems to be upheld by many, if not all, of the modern text-writers who are recognized as authority on the question.

"Mr. Kerr, in his well-known work, in treating this subject said: 'But if it appear that the mistake was induced or encouraged by the misrepresentation of the other party to the transaction, or was perceived by him and taken advantage of, the court will be more disposed to grant relief than in cases where it does not appear that he was aware of the mistake.' Kerr on Fraud and Mistake, 399, 400.

"And in his work on Equity, Mr. Bispham lays down this doctrine, in even stronger and less uncertain terms. He says: 'Where ignorance of the law exists on one side, and that ignorance is known and taken advantage of by the other party, the former will be relieved. More particularly will this be so if the mistake was encouraged or induced by misrepresentations of the other party.' Bispham's Principles of Equity, sec. 188.

. . . . . . . . . . .

"In an exhaustive opinion in which the authorities were ably reviewed by Judge Robertson, after referring to the difficulty of determining, in every case, when a contract was, in fact, made under a mistake of law, it is said: 'When it can be made perfectly evident, that the only consideration of a contract was a mistake as to the legal rights or obligations of the parties, and when there has been no fair compromise of *bona fide* and doubtful claims, we do not doubt that the agreement might be avoided on the ground of a clear mistake of law, and a total want, therefore, of consideration or mutuality': *Underwood v. Brockman,* 4 Dana, 309, 29 Am. Dec. 407.

"In the case of *Ray v. Bank of Kentucky,* 3 B. Mon. 510, 39 Am. Dec. 479, this court referred to and approved the above case and said: 'Upon the whole we would remark that, whenever, by a clear and palpable mistake of law or fact essentially bearing upon and affecting the contract, money has been paid without cause or consideration, which in law, honor, or conscience was not due and payable, and which in honor or good conscience ought not to be retained, it was and ought to be recovered back.'

"Both of these cases are cited with approval in the case of *Louisville, etc., R. R. Co. v. Hopkins County,* 87 Ky. 613, and the doctrine laid down therein has not been departed from by this court."

In 26 C. J. 1208 it is said:

"But misrepresentations involving a point of law will be held actionable misrepresentations of fact if it appears that they were so intended and understood, as where they amounted to an implied assertion that facts existed which justified the conclusion of law expressed, and where in addition to misrepresentations of law there were also actionable misrepresentations of fact, or a promise made without intention to perform."

Representations as to the validity of liens is a question of law, but representations as to priority of liens has been held actionable mis-

representations of fact. (*Kehl v. Abram,* 210 Ill. 218, 102 Am. St. Rep. 158; *Bristol v. Braidwood,* 28 Mich. 191, and see, 26 C. J. 1208, 1209.)

The statute fixes a schedule for the injuries sustained by the plaintiff. Where a mathematical computation has to be made to ascertain the amount of liability under the act, the result of such computation constitutes a matter of fact, rather than a matter of law. There ought to be a presumption, we think, that where an employer of many workmen like the defendant places the adjustment and settlement of claims under the compensation law in the hands of an agent, it selects a person who is familiar with the provisions of the compensation act. The great disparity between the amount paid, $350, and $2,150, to which he was entitled under the compensation act for the particular injury which plaintiff sustained, must be taken into consideration. The amount of compensation he was entitled to was not purely a question of law. It was to some extent a question of fact. There was no misunderstanding as to the extent of his injuries. He had lost three fingers of his right hand and the index finger was rendered useless. The compensation act fixes a schedule for injuries of this character and the amount of compensation is certain. The petition alleged and the proof showed that the agent and employee of the defendant told the plaintiff that the company would pay him the amount he was entitled to recover under the compensation law, which was $350.

Moreover, the workmen's compensation act was not passed for the benefit alone of the injured employee and the employer. It is well understood that there were supposed to be three parties interested: the employer, the employee and the public, and that a broad public policy moved the legislature to enact the measure because of the waste of life and limb in industrial accidents, and because the public, in the end, paid for the financial loss in the increased price of the product. (*McRoberts v. Zinc Co.,* 93 Kan. 364, 367, 144 Pac. 247; *Menke v. Hauber,* 99 Kan. 171, 173, 160 Pac. 1017.)

The act provides for and encourages settlement without resort to litigation or even to arbitration and compels the parties to consent to arbitration where one or the other demands it. (*Goodwin v. Packing Co.,* 104 Kan. 747, 180 Pac. 809; *Roper v. Hammer,* 106 Kan. 374, 378, 187 Pac. 858.) In *Goodwin v. Packing Co.,* supra, it was held that the act contemplates that compensation shall be settled by agreement or by arbitration, and without litigation.

True, the law does not compel the injured workman to demand compensation nor require the employer to pay without demand. But it contemplates that where demand has been made and the injury falls within the schedule fixed by the statute, the employer becomes liable for the amount of a fixed sum as compensation. To order this judgment reversed because the amount of compensation to which the plaintiff was entitled is fixed by a statute and therefore became, in a sense, a question of law, would open the door to fraud in the settlement of meritorious claims under the compensation act for grossly inadequate sums, the settlement being obtained by willful misrepresentation of the amount to which an injured workman was entitled. In all large plants like that of the defendant there are many workmen who are ignorant of their rights and liable to accept any representation of the employer with respect to their rights under the compensation act. We must assume from the record that the defendant's agent, knowing the extent of the plaintiff's injuries and the amount provided for in the compensation act, intentionally misrepresented to the plaintiff the amount he was entitled to recover, and that the settlement was agreed to because plaintiff was ignorant of the amount. We then have a case in which there was no doubt concerning the justice of the claim and the amount was fixed by statute. Public policy should, and we think does, prevent such an injustice.

It follows from what has been said that the judgment is affirmed.