FONDERN, APPELLEE- APPELLANT, *v.* DEPT. OF REHABILITATION AND CORRECTION, APPELLANT-APPELLEE. (Two cases.)

[Cite as Fondern v. Dept. of Rehabilitation (1977),
51 Ohio App. 2d 180.]

(Nos. 76AP-569 and 76AP-593—Decided February 3, 1977.)

*Mr. Nelson Lancione,* for Charles Fondern.

*Mr. William J. Brown,* attorney general, and *Mr. Gene W. Holliker,* for the Department of Rehabilitation and Correction of Ohio.

HOLMES, J. These matters involve the appeal of a judgment of the Court of Claims which awarded the plaintiff the sum of $1,800 as compensation for injuries sustained by the plaintiff, an inmate of the Columbus Correctional Medical Center, who had at the time of the injury been operating a steam clothes press in the laundry room of that institution.

The facts show that the plaintiff on the date in question was operating the press that was controlled by two buttons which, under normal operating conditions, would have to be depressed simultaneously with both hands in order to bring the top or head of the press in contact with the lower portion of the press.

The facts show that the dual-button system is installed on these machines for safety purposes. Also, the facts show that this particular press at the time of the incident had the left button jammed or plugged with a match cover, in order that the head might be depressed by pressing only the right button.

The facts show that other presses in the laundry also had one of their buttons plugged for one-button operation. It also appears that such had been a rather common practice within this institution. There was evidence that the prison authorities were aware that the inmates plugged the operating controls, but there was also evidence that such practice was prohibited and that an inmate who was found to have so plugged an operating button would be "ticketed" or given a citation for an infraction of the institution rules. There is no direct testimony that plaintiff had either been "ticketed" specifically or warned of such a violation.

The facts also show that the particular machine upon which the plaintiff had been assigned for his work had operational problems in that the head came down more abruptly and with more force than it should normally function. The record shows that the plaintiff had informed the institutional authorities of the malfunction of this press, and that it had been worked on prior to and after the injury by one of the inmates assigned to repair such equipment. However, the evidence shows that the irregular performance of the machine had continued up to the time of this accident.

The plaintiff testified that he had not depressed the operating button, that he was in the process of smoothing out a shirt, and that the head had come down independently of any action on his part to activate the head. Another inmate working next to plaintiff testified that he had not seen the plaintiff depress the activator button, and that he had observed the press head operating in the aforestated manner.

A Mr. Sharp, a dealer and professional in the repair of laundry equipment, including these types of Prosperity Body Presses, testified that in his 25 years of experience he had neither seen nor been aware of a press head coming down without both control buttons being depressed. Mr. Sharp further testified that subsequent to the incident he had checked the particular press and found that it was working properly.

Further, Mr. Sharp testified that the heads of these

presses may at times operate downward, hitting the buck too hard as had the press here, but that there was an adjustment for this problem and that such problem would not have been related to the lowering of the head without the release buttons having been pressed.

The trial court found that the standard of care applicable from the state to an inmate working at a job within a penal institution would be that prescribed by R. C. 4113.-03 to 4113.07, the sections of law setting forth the standard of care established for freedom of choice employees.

Such sections provide, among other features, that when an employee shows that he received a personal injury by way of any defect or unsafe condition at his place of employment, the employer is deemed to have had knowledge of such defect or condition, and the defect is prima-facie evidence of neglect on the part of the employer. The employer, however, may, under such sections, show by way of a defense that such defect was not discoverable in the exercise of ordinary care. Additionally, such sections provide that the defenses of contributory negligence and assumption of the risk are not available to the employer in an action brought by the employee where it is claimed that the injury was occasioned by any defect or unsafe condition of the place of employment.

The trial court, among other points, found that the press had been "malfunctioning for a week, prior thereto, and that defendant negligently directed an unqualified inmate to repair the cause thereof."

An additional finding of fact of the trial court was as follows:

"* * * [N]o instructions were given plaintiff prior to this work assignment; no safety rules were given or posted regarding the machine; and defendants had notice of the modification of operation by persons assigned to said presses, impliedly consenting and ratifying such method of operation."

As conclusions of law, the trial court, in addition to the application of the code sections mentioned, found:

"The Court concludes that defendant was negligent in

failing to maintain said press in proper condition and repair. That said negligence was the proximate cause of the injury.

"Further that plaintiff was not under the facts chargeable with contributory negligence or assumption of the risk."

The state appeals, setting forth the following assignments of error:

"1. The Court of Claims erred in ruling that Chapter 4113, Ohio Revised Code, is applicable to a cause of action against the Department of Rehabilitation and Correction brought by an inmate for personal injuries sustained while working at a penal institution.

"2. The Court of Claims' findings of fact as to the negligence of the Department of Rehabilitation and Correction and the contributory negligence of the Plaintiff-inmate are contrary to the manifest weight of the evidence."

The plaintiff cross-appeals, setting forth the following assignment of error:

"The amount of the judgment awarded to plaintiff by the trial court is against the manifest weight of the evidence."

First, it is our determination that the appropriate legal standard of care to be applied in a claim brought by an inmate working in a prison shop or industry is that pronounced by Judge Troop in *Watson* v. *Dept. of Rehabilitation & Correction*, Court of Claims, No. 75-0204-SC, rendered March 16, 1976. Judge Troop held as follows:

"* * * An injured prisoner seeking damages must prove that the negligence of responsible officials, or agents, of the state of Ohio is the proximate cause of his injury. Likewise, the defendant department of the state of Ohio may confront such claimant with the ordinary common law defenses—contributory negligence, assumption of risk, and perhaps even the fellow servant rule."

An inmate of a penal institution is not an employee of the state of Ohio for purposes of applying R. C. Chapter 4113 in an action brought by the inmate for injuries re-

ceived while performing work within the institution. Therefore, as stated by Judge Troop, the injured prisoner must prove that the negligence of the responsible officials proximately caused the injuries complained of. Further, the state of Ohio may have available to it the common law defenses of contributory negligence and assumption of the risk, if applicable, in a given case.

We must now look at the record as made before the trier of the facts to determine what, if any, negligence has been shown upon the part of the state of Ohio, and what, if any, contributory negligence or assumption of the risk has been shown upon the part of the plaintiff inmate.

The evidence reasonably shows that the state of Ohio, through its agents, knew that the control buttons on presses generally in the past had been plugged by inmates. The state knew that the plaintiff's press was malfunctioning in that the head came down too fast and too hard. The state had repairs made on this press by an inmate who had an unknown quantity of expertise in the repair of such equipment.

Countering this evidence, as to the state's negligence, was evidence that the state prohibited the plugging of these control buttons, and that the plaintiff knew of such prohibition. There was no specific knowledge on the part of the state that the button on this machine was plugged. There was expert testimony that the head could not be lowered unless the buttons were depressed, even though the head of the press was coming down too hard. Further, the state had no knowledge that the head had ever been lowered or depressed without the buttons being depressed. In fact, there was testimony that such had never happened.

As to the plaintiff, there was testimony that he was operating the press with knowledge that one of the buttons was depressed. However, the plaintiff specifically testified that he did not depress the other button. Also, the prisoner who was working next to the plaintiff testified that he did not see plaintiff touch the button.

The stance of the testimony, then, is that the head of the press came down unexpectedly, either by way of the

button being touched, or had come down spontaneously for some unknown reason. The trial court chose to believe the evidence to the effect that the plaintiff had not touched the activation button. Further, the trial court found that the particular machine had been malfunctioning in the immediate past, and that an unqualified inmate mechanic had done some work on the machine which had occasioned the automatic lowering of the head of the press on the hand of the plaintiff. The trial court concluded that the state had been negligent in failing to maintain the press in a proper working order, and that such failure was the proximate cause of the plaintiff's injuries.

Finally, the trial court found, in essence, that since the state's negligence pertained to its knowledge of the irregular functioning of the press and its allowing an unqualified person to repair it, and that these things occasioned the self-lowering of the head rather than the depression of the single button, the plaintiff was not contributorily negligent. A more appropriate statement might be that the court found, in essence, that the plaintiff's negligence was not the proximate cause of the injuries.

Although this court, had it been the trier of the facts, may have concluded differently upon the evidence adduced, such findings are not manifestly against the weight of the evidence. This court, had it been in the trial court's position, may well have placed more weight upon the testimony of the defendant's expert, to the effect that the head could not have come down absent the plaintiff's depressing the activator button, and that nothing was found to be wrong with the operation of the head following the incident in question.

However, as noted, the trier of fact concluded otherwise, based upon the evidence before him. We cannot say that he erred in this regard. Therefore, we hereby overrule the assignments of error and affirm the judgment of the Court of Claims.

As to the cross-appeal of Charles Fondern, claiming an inadequate judgment for damages, we overrule the assignment of error.

The only expert medical testimony contained in the record is that of Dr. Watson Walker. Dr. Walker's deposition was taken on April 10, 1976, and was admitted into evidence at the time of trial. Dr. Walker's testimony was primarily limited to a review of the medical records.

Dr. Walker testified that he performed a follow-up examination of the plaintiff after he was originally treated for the burn on his arm. He made no functional or neurological examination. He indicated that such an examination would have been conducted by Dr. Mokharti, the treating physician.

Dr. Walker's sworn testimony, on cross-examination, was as follows:

"Q. Do you have an opinion as to whether or not Mr. Fondern has a satisfactory recovery from this burn?

"A. Yes, I do have an opinion.

"Q. What?

"A. The recovery is satisfactory, and probably as good or better than we could expect."

There is an indication from Dr. Walker's testimony that the plaintiff had reached a maximum recovery with regard to the discoloration and scarring of his arm. However, there is no expert medical testimony concerning the impairment of plaintiff's finger functioning or the probability of continuing irritation, or pain and suffering. Additionally, there is no expert medical testimony contained in the record regarding bone, muscle, or nerve damage to plaintiff's hand or forearm which would constitute a permanent functional disability.

There is nothing in the record to show that the award of $1,800 for the burn received by Charles Fondern was unjust or manifestly against the weight of the evidence. Therefore, as stated, we affirm the judgment of the Court of Claims.

*Judgment affirmed.*

WHITESIDE and McCORMAC, JJ., concur.