McCOY, APPELLEE, *v.* [THE STATE OF OHIO,] OHIO DEPARTMENT OF REHABILITATION & CORRECTION, APPELLANT

(No. 85AP-773 — Decided May 13, 1986.)

*Jaffy, Livorno, Kaufmann & Arnett Co., L.P.A.,* and *Walter Kaufmann,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark T. D'Alessandro,* for appellant.

WHITESIDE, J. Defendant, the state of Ohio, Department of Rehabilitation and Correction, appeals from an $18,000 judgment entered against it in the Court of Claims as the result of an injury sustained by plaintiff, Russell McCoy, an inmate of the Chillicothe Correctional Institute, while he was working on the prison farm located on prison premises.

Yearling bulls, each weighing four hundred to five hundred fifty pounds, were enclosed in a fenced corral while waiting to undergo castration. Two chutes parallel to one another opened off the corral, and it was the responsibility of plaintiff to operate a "collar," in reality a set of lever-activated gates, which would enclose the neck of the bull, restraining it while it underwent the castration process. Plaintiff, assisted by another inmate who was to operate the collar situated at the end of the other chute, stood inside another corral located at the opposite end of the chute from the corral in which the bulls awaited castration. Plaintiff was injured when the other inmate failed to collar his bull, thus permitting it to run into the area where plaintiff stood. The bull butted plaintiff in the biceps region, causing a partial avulsion of the right biceps muscle.

Defendant, the state of Ohio, raises two assignments of error as follows:

"1. The trial court erred in holding that Chapter 4101 Ohio Revised Code is applicable to a cause of action against

the Department of Rehabilitation and Correction brought by an inmate for personal injury sustained while working at a penal institution.

"2. The finding of the trial court that the defendant negligently operated its farm operation is against the manifest weight of the evidence."

Although plaintiff contends that he also presented a claim predicated upon common-law negligence, the Court of Claims did not predicate its finding of liability thereon. Instead, the trial court concluded that the state violated R.C. 4101.11 and 4101.12, which read as follows:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters." (R.C. 4101.11.)

"No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe." (R.C. 4101.12.)

The court further concluded that, notwithstanding plaintiff's status as an inmate in a correctional institution, the definitions of employment, employer and employee contained in R.C. 4101.01 (B), (C) and (D) are applicable. Those sections provide as follows:

"(B) 'Employment' means any trade, occupation, or process of manufacture or any method of carrying on such trade, occupation, or process of manufacture in which any person may be engaged, except in such private domestic service or agricultural pursuits as do not involve the use of mechanical power.

"(C) 'Employer' means every person, firm, corporation, agent, manager, representative, or other person having control or custody of any employment, place of employment, or employee.

"(D) 'Employee' means every person who may be required or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment, or to go, or work, or be at any time in any place of employment."

The court then concluded that:

"As a result of the negligence by the state the plaintiff suffered a partial avulsion of the muscle belly of the bicep[s] muscle at the distal portion of the muscle belly in his right arm."

While conceding that R.C. 2743.02 imposes liability upon the state upon the same basis as it would rest upon a private person, defendant argues that a prisoner and the state do not share an employee-employer relationship within the meaning of R.C. 4101.11 and 4101.12. We agree that plaintiff's status as a prisoner does not make him an employee of the institution in which he is incarcerated even though he may be required to perform services in connection with his incarceration. See *Fondern* v. *Dept. of Rehabilitation & Correction* (1977), 51 Ohio App. 2d 180, 5 O.O. 3d 325, 367 N.E. 2d 901. However, plain-

tiff's prisoner status does not preclude his becoming an employee of the institution for purposes of R.C. 4101.11 and 4101.12 if other indicia of employment are present. R.C. 4101.11 places a duty upon an employer to furnish a safe place of employment for employees, while R.C. 4101.12 prohibits an employer from maintaining or requiring, permitting or suffering an employee to be in a place of employment which is not safe and from failing to take adequate safeguards to insure the safety of employees.

Pursuant to R.C. 4101.01(D), one is an employee only if required or directed to engage in employment or work in consideration of direct or indirect gain or profit. A prisoner performing services required as one of the conditions of imprisonment does not ordinarily do so for gain or profit but, rather, as a requirement of his involuntary servitude. However, *if* a prisoner performs services for a consideration of direct or indirect gain or profit, he may become an employee of the institution within the contemplation of R.C. 4101.01(D). Here, there is no evidence that plaintiff performed the services in consideration of direct or indirect gain or profit rather than as involuntary servitude required because of his prisoner status. The only evidence on the subject is a statement by an unidentified person during argument on defendant's motion to dismiss at the conclusion of plaintiff's case to the effect that they are paid "$20 a month." Even assuming such a meager payment is made, such payment does not indicate that the prisoner is performing services for a consideration of direct or indirect gain or profit rather than performing involuntary servitude as a condition of his imprisonment. Employment connotes a voluntary relationship, even though while that relationship exists the employer may exert control over the employee who remains free to discontinue the relationship rather than per-

form services he does not wish to perform. A prisoner, however, has no such option but is required to perform services as involuntary servitude as one of the conditions of his having been sentenced to incarceration.

Plaintiff argues to the effect that the consideration involved may flow to the employer; however, R.C. 4101.01(D) refers to consideration flowing to the employee. Nor does R.C. Chapter 5145 create such an employment relationship but, instead, sets forth the requirement that involuntary servitude be performed by prisoners under established standards. Accordingly, the trial court's finding that plaintiff was an employee of the state is contrary both to the evidence and the law.

However, plaintiff conceivably could be a "frequenter," which is defined by R.C. 4101.01(E) as any person other than an employee or trespasser "who may go in or be in a place of employment." Just as R.C. 4101.01(B) (employment) excludes agricultural pursuits not involving the use of mechanical power, R.C. 4101.01(A), in defining "place of employment," provides that the term "does not include any place where persons are employed in * * * agricultural pursuits which do not involve the use of mechanical power." Here, there is no evidence that the activity in which plaintiff was engaged involved the use of mechanical power, so that the activity could not constitute employment and the place could not constitute a place of employment.

The evidence indicates that plaintiff utilized a lever to operate the collar in question. A lever is one of the six simple machines, the other five being inclined plane, wheel and axle, pulley, wedge and screw. Operating a lever does not involve the use of mechanical power but, instead, involves only manual labor, the same as would the use of a hoe in farming, even though the hoe involves the

use of a wedge and sometimes may be used as a lever.

The term "mechanical power" is not statutorily defined, nor does there appear to be any Ohio authority defining the term. Case law from other jurisdictions suggests that mechanical power should be construed to refer not to the nature of the device being operated but, rather, to the source of the force involved, which does not, in any event, include manual operation. See *Fox* v. *Victory Ice Co.* (1930), 129 Kan. 778, 780, 284 P. 382, 383, in which it is stated:

"* * * Now what is meant by 'power' as so used in that definition?

"This court has previously considered that question in *Menke* v. *Hauber,* 99 Kan. 171, 160 Pac. 1017 wherein it was said:

" 'We think it is clear that by the word "power" the legislature did not intend to include hand power, but had reference to mechanical power. * * * The context of the act shows that the word "power" must necessarily have reference to energy developed by machinery. * * *' * * *''

In the sense in which it is used in the statute, the word "power" connotes the strength or force exerted to perform work. Standing alone, the word "power" could include manual or hand power. However, the statute modifies the word "power" by the adjective "mechanical." This indicates an intent to exclude power derived from manual or animal exertion. In the sense used, mechanical connotes that the force or strength (power) to perform the work is derived from a mechanical, rather than a manual or animal source. This suggests that the power is produced by the use of a machine. Were we to conclude otherwise, the exception would be virtually meaningless, since it would except only agricultural pursuits not involving the use of power developed by machinery, animals or manual labor. Under such a construction, nothing would be excluded because all agricultural pursuits involve some use of power (force or strength) developed by either machinery, animals or manual labor. It is clear, therefore, that the term "mechanical power" is used in the sense of utilization of force or strength developed by machinery. Although a lever is a simple machine, the force or strength which causes it to function is manual labor.

The evidence is imprecise as to the specific mechanism of the collar operated by plaintiff. However, it is stated several times that the collar worked by means of a lever and that plaintiff operated the collar by manual exertion. Plaintiff testified that to clamp the bulls, "the head of this lever * * * [is] pull[ed] down," and that his only instruction as to operation of the lever was "just to work it up and down, you know." Other evidence was no more precise, another witness testifying that there were two different types of "collars," one having two doors that slide to catch the neck of the animal, and the other having two doors that go up and down to catch the animal, both of which are operated by levers. There was no evidence that the activity in which plaintiff was engaged involved the use of mechanical power, nor that the activity of others assisting in the process involved the use of mechanical power. On the other hand, the evidence was clear that an agricultural pursuit was involved. In short, there was no evidence from which the trial court could have properly concluded that the portion of the farm in which plaintiff was working at the time constituted a "place of employment" within the contemplation of R.C. 4101.11 or 4101.12, as defined by R.C. 4101.01(A). Accordingly, the first assignment of error is well-taken.

The second assignment of error raises a somewhat vexing issue, in that there was evidence adduced from which the trial court could have found that

defendant negligently operated its farm operation. A factual finding will not be found to be against the manifest weight of the evidence if it is supported by competent, credible evidence. *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578. There was evidence that the design of the chutes and corrals conformed to normal farm operation and standards. However, there was also evidence that the yearling bulls being castrated weigh between four hundred and five hundred fifty pounds; that they may be frightened, dangerous and unpredictable; that the animals are released, or as in this case escape, into the corral area in which persons operating the collars, such as plaintiff, are standing; that there is no fence or barricade around the collar operators, who have no means of escape except to attempt to reach and climb over a five- or six-foot-high fence; and that it would be feasible to erect fences or other barriers to protect the collar operators. Accordingly, there was evidence from which the trial court could have found that defendant failed to provide a safe place of employment or otherwise was negligent in connection therewith, if R.C. 4101.11 and 4101.12 were applicable. Accordingly, the second assignment of error is not well-taken.

Although plaintiff contends that he alleged and presented a claim predicated upon common-law negligence, as well as upon violation of R.C. 4101.11 and 4101.12, the trial court predicated its determination solely upon application of the statutes. Contrary to plaintiff's assertions, violations of such statutes do not constitute negligence *per se* but, instead, impose duties upon employers. The duty thus imposed is only a general standard, not a specific standard. *State, ex rel. Davidson,* v. *Blake* (1945), 145 Ohio St. 102, 30 O.O. 309, 60 N.E. 2d 664; *State, ex rel. Niebel,* v. *Indus.*

*Comm.* (1973), 36 Ohio St. 2d 86, 65 O.O. 2d 226, 303 N.E. 2d 885.

Since the trial court predicated its finding of negligence upon breach of statutory duty and made no finding with respect to the existence of a common-law duty, the issue of common-law negligence is not before us and is not determined thereby.

For the foregoing reasons, the first assignment of error is sustained, and the second assignment of error is overruled. The judgment of the Court of Claims is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed
and cause remanded.*

NORRIS and NICHOLS, JJ., concur.

NICHOLS, J., of the Madison County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.