[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} Fred McDonald, plaintiff-appellant, appeals a judgment of the Ohio Court of Claims rendered in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC").
 {¶ 2} On October 17, 1997, appellant was an inmate at Warren Correctional Institution ("WCI") serving a sentence for aggravated robbery. Appellant had been assigned to WCI's plumbing crew, and his duties included fixing plumbing leaks and making repairs. On this day, appellant was to assist WCI staff, including his supervisor Jeff Blevins, dismantle plumbing fixtures to conduct a search for homemade wine in the cell of inmates Matt May and Joe Gorman, who were housed in the segregation unit. Corrections Officer Lt. Patrick O'Neill removed May and Gorman from their cell and took them to the recreation area of the segregation unit. Although appellant claimed wine was found in the cell, Blevins and Lt. O'Neill both testified that no wine was discovered.
 {¶ 3} After completing the search, appellant was placing tools in his tool cart some distance outside the cell when Lt. O'Neill began escorting May and Gorman back to their cell. Upon returning to their cell, May and Gorman, who were not bound in shackles but were handcuffed in front, assaulted appellant. May struck appellant with his cuffed hands, and May and Gorman both tried to kick him. After Blevins and Lt. O'Neill broke up the fight, appellant was taken to the infirmary. He was released from incarceration in 1998.
 {¶ 4} On October 12, 1999, appellant filed an action in the Ohio Court of Claims against ODRC, alleging negligent supervision and failure to follow ODRC policies. On July 18, 2001, a liability-only trial was held before the trial court, and the court issued a decision in favor of ODRC on April 19, 2001. Appellant filed a motion for new trial, which the trial court denied. Appellant appeals the court's judgment in favor of ODRC, asserting the following two assignments of error:
 {¶ 5} "[I.] The trial court erred and abused its discretion in denying liability, defendants-appellees having violated policies and procedures and ignored constructive notice of probable attack, as well as providing workers a safe place to work.
 {¶ 6} "[II.] The trial court's decision is against the weight of the evidence and is not supported by the evidence."
 {¶ 7} Appellant argues in his first assignment of error that: (1) ODRC's violation of prison policy and procedures exposed prison workmen to attack; (2) the underlying facts provided constructive notice of probable assault if two segregation inmates were brought into the block while the general population inmates aided the institution in searching for contraband; and (3) ODRC has a duty to provide inmates with a safe place to work and protect them from hazards created by the environment.
 {¶ 8} In all negligence cases, a plaintiff must show the existence of a duty, a breach of the duty, and an injury resulting proximately from the breach. Menifee v. Ohio Welding Products, Inc. (1984),15 Ohio St.3d 75, 77. Ohio law imposes a duty of reasonable care upon the state to provide for its prisoners' health, care, and well-being. Clemets v. Heston (1985), 20 Ohio App.3d 132, 136. The determination of what degree of care defendant owed to plaintiff must center on the foreseeability of plaintiff's injuries. Jeffers v. Olexo (1989),43 Ohio St.3d 140. The extent of the duty will also vary with the circumstances. Clemets, supra. However, the state is not an insurer of inmate safety and owes the duty of ordinary care only to inmates who are foreseeably at risk. McAfee v. Overberg (1977), 51 Ohio Misc. 86.
 {¶ 9} When one inmate intentionally attacks another inmate, actionable negligence may arise only where there was adequate notice of an impending attack. Baker v. State (1986), 28 Ohio App.3d 99. Appellant argues that ODRC had notice of the attack because ODRC knew Gorman and May posed a danger to appellant. Appellant claims ODRC knew Gorman and May were dangerous because they were in the segregation unit, they were aware appellant was engaged in a search for contraband, and May was intoxicated. Appellant claims these facts demonstrate ODRC should have been on notice that an attack could occur. He maintains a reasonably prudent corrections officer would realize the danger of a possible attack by segregation inmates when brought into direct contact with other inmates assisting in the search to find contraband in their cell.
 {¶ 10} Appellant first asserts that ODRC's violation of prison policy and procedures exposed appellant to attack. Appellant cites our decision in Vasquez v. Ohio Dept. of Rehab. Corr. (Feb. 22, 2001), Franklin App. No. 00AP-387, for the proposition that failure to follow block orders, adopted policies or procedures, or administrative regulations in dealing with segregated inmates that results in an assault, is foreseeable and imposes liability.
 {¶ 11} In the present case, appellant claims several sections of ODRC's WCI post order 310-30, Security and Control, were violated. Appellant first cites Section VII, Additional Duties, subsection (H), which indicates "Inmates in this unit are not to have contact with general population inmates in any way, form, or means." However, as testified by Lt. O'Neill, when inmates are in segregation, there are instances when they must have contact with the general population, such as when they are taken to the infirmary, psychological consultation, visitation, the warden's office, and transportation across the compound. He stated that it is never the case where a segregated inmate has completely no contact with the general population. A logical reading of subsection (H) would not seem to prohibit incidental contacts with one or a few members of the general population when reasonably necessary to carryout the functions of the institution. Complete isolation would be virtually impossible for substantial time periods. In the present case, we find that May's and Gorman's minor contact with appellant and the other members of the plumbing crew was not so unreasonable as to constitute a violation of the post order.
 {¶ 12} Appellant also claims ODRC violated Section VI, Procedures, subsection V, Moves Within Segregation, subsection (7), which provides that to remove an inmate from a two-man cell, a guard must handcuff and place a belly belt around the inmate. Appellant argues in his brief that this policy was violated because neither May nor Gorman wore a belly belt. We first note that nowhere in the entire record below do we find any reference to this subsection. Appellant's counsel did not raise this argument or point out this subsection in any filing, during examination of the witnesses, or during closing argument. Only passing references were made regarding belly belts during examination of the witnesses conducted by appellant's counsel, without any specific questions as to whether such were required. At trial, appellant's counsel appeared to be concentrating specifically on the lack of leg irons or shackles, which, parenthetically, we note are also not required by any provision in the post order. Appellant's failure to raise this argument at the trial level constitutes a waiver of such for appellate purposes. Regardless, Section V generally refers to moves within segregation, and there are other provisions that deal with specific instances. For example, Section V, Policy, subsection (N)(2)(c) requires only handcuffs when inmates are transferred to the exercise area and returned to their cells. In the present case, May and Gorman were being transferred to and from the recreation area; thus, Section V, subsection (N)(2)(c) would require only handcuffs. Further, Section VII, Additional Duties, subsection (D) requires only that inmates be escorted and handcuffed at all times when out of the unit or out of their cells. Lt. O'Neill also testified that when escorting an inmate to recreation, only handcuffs are required. For these reasons, we find appellant's argument with regard to this section untenable.
 {¶ 13} After reviewing the record, we find this case is not on all fours with Vasquez, supra. In Vasquez, the record was "replete" with testimony from many witnesses, including corrections officers that the "normal procedure" established by the institution's own policy requiring a head-to-toe invasive strip search was not followed. Unlike the record in Vasquez, in the present case, there is no testimony from any witnesses, much less any corrections officers, that the normal procedures established by the institution's own policy were not followed. Our own review of the post order also fails to reveal a policy violation. Therefore, we find appellant's citation to Vasquez unavailing.
 {¶ 14} Appellant next asserts that the underlying circumstances alone provided constructive notice of probable assault, given two segregation inmates were brought into the block while the general population inmates aided the institution in searching for contraband. Although appellant claims the two inmates knew he was in their cell looking for contraband, the record is not clear. May testified that he did not remember anything about the incident whatsoever. Gorman specifically testified that he did not know what appellant was doing in his cell. Although Gorman later said "[t]hat's why they was in my cell, contraband," it is difficult to discern whether he was recalling such in hindsight or whether he knew this at the time of the incident. Also, Lt. O'Neill testified that from Recreation Area B, where Gorman and May were, it was impossible to see the cell in which appellant was working. Although he was not certain, Lt. O'Neill did not believe Gorman and May knew what appellant was doing in their cell.
 {¶ 15} Further, appellant argues that because Gorman admitted he was drunk, it was obvious that he was going to be angry that appellant had searched his cell. However, the trial court found Gorman's testimony on his intoxication not credible. The trial court was in the best position to view Gorman and judge his credibility. Lt. O'Neill also testified that he did not remember May or Gorman being intoxicated, and he did not remember whether they were ticketed for being intoxicated. Nevertheless, just as the trial court found, neither Gorman's nor May's intoxication would necessarily give reasonable notice to ODRC of their intent to attack appellant. Appellant himself testified that he knew Gorman and May prior to the incident and that he did not have any problems with them. Gorman also said he had no ill feeling toward appellant at the time of the incident, and he did not know why May assaulted appellant. Given this testimony, ODRC could not have had any notice of May's and Gorman's impending attack.
 {¶ 16} Appellant also points out that only one guard, Lt. O'Neill, transported both Gorman and May. However, appellant has failed to present any evidence of a requirement that there be one guard per inmate while transporting an inmate. Lt. O'Neill testified there was no policy or post order in effect at the time of the incident that required one correctional officer per inmate while escorting the inmate from their cell to the recreation area. Further, despite appellant's claim at trial that May and Gorman were not escorted by any guards at the time of the incident, Lt. O'Neill testified that he escorted the two prisoners and that it was absurd to believe that WCI would permit two segregation inmates to walk around unescorted in a maximum security facility. This was a question of credibility that the trier of fact, in this case the trial court, was in the best position to determine. See Hartford Cas. Ins. Co. v. Easley (1993), 90 Ohio App.3d 525. The trial court apparently chose to believe Lt. O'Neill, and we see no reason to disturb such determination.
 {¶ 17} Further, appellant's claim that the incident lasted 35 to 40 seconds is also dubious. Lt. O'Neill said that Gorman entered the cell as instructed, but May quickly "shot" over to appellant, lowered his shoulder, and knocked appellant to the ground. Lt. O'Neill testified that Gorman attempted to come back out of his cell and kick appellant, but he held Gorman back. Lt. O'Neill and Blevins both stated that Blevins then grabbed May and pinned him against the wall. Blevins also stated that he saw Gorman trying to kick appellant, but another guard was restraining him, which is consistent with Lt. O'Neill's testimony that he held Gorman back. Given the testimony of Lt. O'Neill and Blevins, it is unlikely that the attack lasted as long as appellant claims. Again, this was a question of credibility within the providence of the trier of fact. The trial court believed Blevins and Lt. O'Neill, and we see no reason to disturb such determination.
 {¶ 18} Also, although appellant testified that Gorman began yelling and swearing at him upon entering the cell area, Lt. O'Neill testified that neither May nor Gorman yelled anything at appellant prior to the physical confrontation that would have given him any indication that an altercation was about to take place. Blevins also did not hear either inmate taunt or yell at appellant prior to the attack. Lt. O'Neill stated that during the time he escorted Gorman and May from the recreation area to their cell, neither inmate gave any indication there was a problem or gave him any difficulties, signs of which would have put him on notice that they were angry or about to attack appellant. Based upon the foregoing, we find that the underlying circumstances did not provide ODRC with sufficient notice of the assault.
 {¶ 19} Appellant next contends ODRC has a duty to provide inmates with a safe place to work and protect them from hazards created by the environment. It is true that ODRC has a duty to provide inmates with a safe place to work. Fondern v. Ohio Dept. of Rehab. Corr. (1977),51 Ohio App.2d 180. Inmates who are injured while working in a prison shop or industry may have a cause of action in negligence. " ' * * * An injured prisoner seeking damages must prove that the negligence of responsible officials, or agents, of the state of Ohio is the proximate cause of his injury. * * * ' " Id. at 183, citing Watson v. Ohio Dept. of Rehab. Corr. (Mar. 16, 1976), Ct. of Claims No. 75-0204-SC. Just as with the negligence claim discussed above, the existence of ODRC's duty to provide a safe work environment depends on the foreseeability of appellant's injury. See Thompson v. Ohio Fuel Gas Co. (1967),9 Ohio St.2d 116. Whether or not appellant's injury was foreseeable depends on ODRC's knowledge. See id. We have already rejected appellant's argument that ODRC had notice of the assault and the danger to appellant by allowing segregation inmates to have contact with the general population. For the same reasons we rejected this argument above, we reject it with regard to ODRC's duty to provide a safe workplace. It was neither reasonably foreseeable to ODRC's employees that May and Gorman would assault appellant, nor did ODRC have notice of the assault. Thus, appellant's argument is without merit with respect to this issue. For the foregoing reasons, appellant's first assignment of error is overruled.
 {¶ 20} Appellant argues in his second assignment of error the trial court's decision was against the manifest weight of the evidence and not supported by sufficient evidence. With regard to the sufficiency of the evidence argument, the standard of review in a civil case is similar to the standard for determining whether to sustain a motion for judgment notwithstanding the verdict. Easley, supra. Thus, this court must determine if appellant was entitled to judgment as a matter of law when the evidence is construed most strongly in favor of ODRC. Id. In other words, is there some competent and credible evidence going to all essential elements of the case, construing the evidence in favor of ODRC. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80; see, also, Collins v. Ohio State University College of Dentistry (June 27, 1996), Franklin App. No. 96API02-192.
 {¶ 21} In reversing a judgment of the trial court on the basis that the verdict is against the manifest weight of the evidence, an appellate court conducts the same manifest weight analysis in both criminal and civil cases. Green v. Dept. of Rehab. Corr., Franklin App. No. 02AP-24, 2002-Ohio-5967, at ¶ 19; Flowers v. City of Whitehall, Franklin App. No. 01AP-1150, 2002-Ohio-3890, at ¶ 12. " `The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 22} "Moreover, `every reasonable presumption must be made in favor of the judgment and the findings of facts[.]' * * * Furthermore, `if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment.' * * *." Flowers, at ¶ 13, quoting Miller-Wagenknecht v. City of Munroe Falls (Dec. 5, 2001), Summit App. No. 20324.
 {¶ 23} Appellant presents no new arguments under this assignment of error. He merely restates the same arguments discussed above with regard to negligence, notice, and foreseeability. We have already analyzed these issues, addressed the credibility of the witnesses, considered the conflicting testimony, and found appellant's arguments to be without merit. Therefore, after reviewing the entire record, we find there was sufficient evidence to support the trial court's judgment, and the judgment was not against the manifest weight of the evidence. Thus, appellant's second assignment of error is overruled.
 {¶ 24} Accordingly, appellant's two assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
DESHLER and TYACK, JJ., concur.