HARTFORD CASUALTY INSURANCE COMPANY, Appellee,

v.

EASLEY, Appellant.

[Cite as *Hartford Cas. Ins. Co. v. Easley* (1993), 90 Ohio App.3d 525.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–86.

Decided Sept. 28, 1993.

526

*Earl, Warburton, Adams & Davis* and *Thomas L. Davis,* for appellee.

*Robert M. Lancione,* for appellant.

---

WHITESIDE, Judge.

Defendant-appellant, Naomi R. Easley, appeals from a judgment of the Franklin County Court of Common Pleas and raises the following assignments of error:

"1. The trial court's finding that Hartford did not receive notice of Easley's underinsured motorist claim until August 10, 1987, was not supported by the evidence and, as the result thereof, constitutes reversible error.

"2. The trial court's finding that Hartford did not have a reasonable period of time to inform Easley of the underinsured motorist coverage and to inform Easley of the events which would preclude any entitlement to them was against the manifest weight of the evidence and, as the result thereof, contrary to law.

"3. The trial court committed reversible error in excluding certain evidence which was relevant to whether Easley should be precluded from receiving underinsured motorists benefits pursuant to Hartford's policy."

Defendant was involved in an automobile accident on January 21, 1986. She was driving a vehicle owned by Joseph and Elmira Jackson with their consent. The vehicle was insured by plaintiff, Hartford Casualty Insurance Company ("Hartford"). The Hartford policy contained a $100,000 underinsured motorist provision with a subrogation right in which the clause required the insured not to prejudice that right. The driver of the other vehicle was Ruth Jarvis, and her automobile was insured by Motorists Mutual Insurance Company ("Motorists").

Defendant's attorney wrote a letter to Jackson, dated June 23, 1987, informing her that Jarvis's insurance may not have been sufficient to compensate defendant and inquired as to whether Jackson had underinsured motorist coverage in her policy. The letter also indicated that defendant was attempting to settle with Motorists. Jackson declined to reveal either her insurance agent or insurance company to defendant, so defendant could not communicate with the unknown and was forced to correspond only through Jackson. On July 24, 1987, defendant's counsel again wrote to Jackson, indicating that defendant had not received a response from Jackson's insurance company, so that defendant assumed that Jackson's insurer was not interested in pursuing a claim against the tortfeasor. This second letter also indicated that defendant was making an underinsured motorist claim if coverage existed.

On August 4, 1987, defendant and Motorists agreed orally to settle for the policy limits of $50,000. Having received no response from plaintiff to either the

June 23 or July 24 communications, on August 20, 1987, defendant executed a full and final release of all claims against Jarvis upon payment of the policy limits by Motorists.

Apparently, Hartford began investigating the accident sometime after August 10, 1987. Hartford filed this action for declaratory judgment on May 18, 1988. Hartford sought a declaration that defendant had failed to comply with the insurance contract by executing the release and extinguishing Hartford's subrogation rights, as against Jarvis. Hartford contended that this failure to comply extinguished defendant's entitlement to underinsured motorist coverage.

Hartford filed a motion for summary judgment, which was granted by the Franklin County Court of Common Pleas and affirmed by this court. We based our opinion upon *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456, in which the Ohio Supreme Court held in the syllabus that:

"1. An insurer must aid its insured in the preservation of its subrogation rights.

"2. When an insured has given his underinsurance carrier notice of a tentative settlement prior to release, and the insurer has had a reasonable opportunity to protect its subrogation rights by paying the underinsured motorist benefits before the release but does not do so, the release will not preclude recovery of underinsurance benefits. (*Bogan v. Progressive Cas. Ins. Co.* [1988], 36 Ohio St.3d 22, 521 N.E.2d 447, modified and explained.)

"3. The insurer's failure to respond, within a reasonable time, to notification by the insured of a settlement offer will operate to void a subrogation clause in the insurer's underinsured motorist provision."

Defendant appealed our judgment to the Ohio Supreme Court. In *Hartford Cas. Ins. Co. v. Easley* (1991), 62 Ohio St.3d 232, 581 N.E.2d 526, the Ohio Supreme Court reversed our judgment and found *McDonald* not to control under the facts of this case, stating at 235, 581 N.E.2d at 528:

"There exists a notable distinction between *McDonald, supra,* and the instant case. * * * In the present case, we are confronted with an entirely different scenario. Here, Easley, as the borrower of Jackson's automobile, was not able to simply provide *her* underinsurance carrier with notification of a possible settlement with Motorists. * * * Any entitlement Easley may have had to available benefits was by virtue of Easley borrowing Jackson's car and the issuance of the contract of insurance by Hartford to Jackson. To further complicate matters, it appears from the record that Jackson, for whatever reason or reasons, impeded Easley's efforts to ascertain whether underinsurance benefits existed. Jackson was reluctant to divulge the name of her insurance agent and failed to provide Easley with information regarding available underinsurance coverage, *although*

*Jackson did, apparently, notify her insurance agent on at least three occasions of Easley's underinsurance claim.* Indeed, Easley was confronted with a difficult, if not impossible, task of determining the existence of any underinsurance benefits that Easley may have been entitled to receive." (Emphasis added.)

The Supreme Court reversed our judgment and remanded this case to the trial court to determine if (1) "Hartford received notice of Easley's underinsurance claim before the release of Jarvis was executed on August 20, 1987"; and (2) "whether the notice received by Hartford (if it is found that notice was given and received) gave Hartford a 'reasonable time' to respond to Easley." *Id.* at 235–236, 581 N.E.2d at 529. It is clear from the opinion that the Supreme Court instructed the trial court to decide whether Jackson's deposition testimony was credible in order to determine the time that the agency received the letters inquiring as to coverage and giving notice of the claim. The court stated at 236, 581 N.E.2d at 529:

"*Jackson's deposition,* taken in connection with Easley's suit against Jackson in the common pleas court, and being part of the record before us, *does reflect that Jackson gave both the June 23, 1987 and the July 24, 1987 letters to her insurance agent and that she reported to her agent the telephone call from Easley's attorney which occurred during the period between the two letters.* Nevertheless, *the efficacy of this testimony should be determined by the factfinder* at a trial rather than upon a motion for summary judgment." (Emphasis added.)

Upon remand, the trial court determined that Hartford received notice of defendant's underinsurance claim on August 10, 1987, but the ten days between receiving that notice and the release was not a reasonable time for Hartford to respond to defendant. Defendant is appealing that decision.

■ By her first assignment of error, defendant contends that the trial court's finding that Hartford did not receive notice of her underinsured motorist claim until August 10, 1987, was not supported by the evidence. The standard for a review of the sufficiency of the evidence in a civil case is similar to the standard for determining whether to sustain a motion for judgment notwithstanding the verdict, which is whether the defendant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the prevailing party, which in this case is Hartford. In other words, is the verdict one which could reasonably be reached from the evidence? See Civ.R. 50(B) and *Cataland v. Cahill* (1984), 13 Ohio App.3d 113, 13 OBR 131, 468 N.E.2d 388. The mandate of the Supreme Court is the law of the case, binding both upon this court and the trial court. The issue before us is whether the determination of the trial court is erroneous as a matter of law for failure to apply the law of the case as established by the Supreme Court upon the first appeal.

In this case, the trial court determined that Hartford received notice of defendant's underinsurance claim on August 10, 1987. However, the trial court also determined that Jackson "dropped off *a notice of loss* for the underinsured motorist claim with Murray and Sons Insurance Agency, Hartford's local agent on Saturday, August 8, 1987." (Emphasis added.) Then, the trial court stated, "No evidence was presented to show that Hartford received notice of *Easley's underinsurance claim* before August 10, 1987." (Emphasis added.) These statements are inconsistent. If Jackson "dropped off a notice of loss" to the agent, then Hartford had notice at that time, since notice to its agent is notice to Hartford. A person who procures insurance is the agent of the company, not of the insured, pursuant to R.C. 3929.27, which provides:

"A person who solicits insurance and procures the application therefor shall be considered as the agent of the party, company, or association thereafter issuing a policy upon such application or a renewal thereof, despite any contrary provisions in the application or policy."

This relationship subsists with respect to making claims or other communications to the company at least in the absence of notice to the insured to the contrary. See, also, R.C. 3905.01(C), which provides that an insurance company is "bound by the acts" of its licensed agent "within his apparent authority as its agent." Since Murray and Sons Insurance Agency ("Murray and Sons") was the agent of Hartford, its knowledge is imputed to Hartford because notice received by the agent within an agent's authority and received during the scope of employment is considered received by the company. See *Massachusetts Life Ins. Co. v. Eshelman* (1876), 30 Ohio St. 647, paragraph three of the syllabus; *Empire Securities Corp. of Ohio v. Travelers Indemn. Co.* (Dec. 24, 1974), Franklin App. No. 74AP–328, unreported; 3 Ohio Jurisprudence 3d (1978) 238, Agency, Section 157 (Imputation of Agent's Knowledge to Principal).

Thus, if the agent received the notice of an underinsured motorists claim on August 8, 1987, Hartford also had such knowledge on August 8, 1987. The trial court's determination that August 10, 1987, was the date that Hartford received notice of defendant's underinsurance claim is contrary to law since that was the date that the agent forwarded the loss notice and the letters to Hartford's main office. The trial court failed to consider the issue and determine when the June letter was received by Hartford's agent. Instead, the trial court incorrectly assumed that Hartford did not receive notice until the communication was forwarded to it by its agent.

An agent of Murray and Sons testified that he had little knowledge of when the agency received the two letters, which he found in the file. At one point, he stated that the agency's file indicated that the agency received the

letters on August 10, 1987, based upon that being the date that the secretary had prepared a loss form, attached the letters and sent the information to Hartford. It was company policy to forward claim letters from attorneys with proper documentation such as an accord loss form. However, he also stated that, if the agency had received the June letter separately before August 10, 1987, the agency would not have sent that letter to the insurance company. He stated:

"So had our office received a letter from Mr. Lancione [defendant's counsel], we would have went ahead, made up an accord form and not submitted that to any insurance company or got a hold of the insured, just document what went on, what's this about."

The only direct evidence that Murray and Sons received the June letter shortly after it was written and much earlier than August 10, 1987, was the deposition testimony of Jackson introduced as an exhibit at trial. Jackson testified that, after she received the June letter from defendant's counsel, she telephoned Murray and Sons and asked them what to do with the letter, and was told by Murray and Sons to bring the June letter to the office. She stated that, within a week to ten days after receipt, she delivered the letter to Murray and Sons. Additionally, Jackson testified that she placed the July letter from defendant's counsel in Murray and Sons' mailbox. She also stated that she saw the letter in the agency's office when she delivered a subpoena [1] for Murray and Sons the following Monday.

There was clearly evidence before the trial court that Murray and Sons received the June letter and notice of the underinsured motorist claim and settlement before August 10, 1987. This evidence was not controverted by any direct evidence to the contrary. The agent's testimony regarding the June letter was internally inconsistent and not based upon personal knowledge. The trial court failed to make a finding regarding the crucial June letter. In fact, the trial court stated: "*No evidence* was presented to show that Hartford received notice of Easley's underinsurance claim before August 10, 1987." (Emphasis added.) This finding is not supported by the record. Jackson testified that she delivered the June letter to Murray and Sons within ten days of her receiving it, and this testimony was before the trial court by the deposition having been admitted into evidence as an exhibit. Additionally, this testimony was the only direct evidence of the agency's receipt of the June letter, which was within ten days of Jackson's receipt of it. Moreover, the trial court failed to determine the "efficacy of

---

1. A subpoena *duces tecum* was issued upon Jackson for plaintiff's counsel to take her deposition testimony in this case. (Plaintiff's Exhibit D–2.) The transcript states that the attorneys "worked out some arrangements to acquire the information without taking her deposition." The deposition introduced as an exhibit in this case was taken on September 25, 1987, when the case was before the trial court the first time.

Jackson's testimony," as mandated by the Supreme Court. Defendant's first assignment of error is well taken.

By her second assignment of error, defendant contends that the trial court's finding that Hartford did not have a reasonable period of time to inform Easley of the underinsured motorist coverage and to inform Easley of the events which would preclude any entitlement to the coverage was against the manifest weight of the evidence. The standard for determining whether a judgment in a civil case is against the manifest weight of the evidence has been set forth by the Ohio Supreme Court in *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus, as follows:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

Considerations of credibility and questions of weight are primarily for the trier of fact, not the reviewing court. *Commonwealth Land Title Ins. Co. v. Davis* (Sept. 22, 1992), Franklin App. Nos. 91AP–1239 and 91AP–1240, unreported, 12–13, 1992 WL 238897, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Therefore, if there is competent, credible evidence upon which the trial court could reasonably have based its factual findings, the judgment must be affirmed.

In this case there is evidence supporting the trial court's finding that Jackson "dropped off a notice of loss for the underinsured motorist claim with the Murray Agency, Hartford's local agent, on Saturday, August 8, 1987." In her deposition testimony, Jackson stated that she put the July letter in Murray and Sons' mailbox on the weekend, on a Saturday, and then saw the letter in their office on the following Monday when she delivered her subpoena. The subpoena was dated August 7, 1987. Since the agency admits possession of the letters on August 10, 1987, there is competent, credible evidence that Jackson delivered the July 24 letter on August 8, 1987, as found by the trial court.

However, Jackson also stated that she delivered the June letter within ten days of receiving it. This letter would put the agency on notice that defendant was considering pursuing an underinsured motorist claim since it was an inquiry as to the existence of underinsured motorist coverage. In fact, plaintiff's Exhibit D–7 contains an admission that, as of August 18, 1987, Hartford had notice from defendant's counsel that Motorists had exhausted its policy limits. The agent testified that he had no personal knowledge of when the agency received either letter, and stated that, under office policy, an inquiry as to coverage would not normally be forwarded to the insurance company. He could not dispute the

telephone call from Jackson regarding the June letter since he had no personal knowledge.

■ Even if the trial court's finding of ten days were correct, the finding that Hartford did not have a reasonable period of time to inform Easley *of the underinsured motorist coverage* is not supported by evidence, since ten days may be a reasonable period of time under the proper standard. The June letter constituted an inquiry as to underinsured motorist coverage, whereas the July letter was notice of intent to make an underinsured motorist claim if there was coverage. Hartford had a reasonable time to respond to the June letter, since it was merely an inquiry as to coverage and notice of an attempt to settle. Furthermore, Hartford's evidence indicated that it had a reasonable time to respond to the June letter, if Jackson's uncontradicted testimony is believed. This is the essential holding of the Supreme Court upon the first appeal since it found that the June inquiry could be sufficient to require a timely response from Hartford. Since Hartford responded within two weeks of receiving the inquiry (Murray and Sons received the letters on August 8, 1987, and Hartford responded with policy limitations on August 21, 1987), less than two weeks was necessary for Hartford to respond.

The trial court found that Hartford needed to investigate the claim fully to determine the value of the claim and needed the "accident report, medical records and medical expenses in order to evaluate Easley's underinsured motorist claim. Hartford would want information on injuries which Easley sustained in a previous accident. Hartford would also want Easley to undergo an independent medical exam. Evaluation of this scale is reasonable for a claim which could reach $50,000. Ten days is not sufficient time to conduct this type of evaluation and determine the value of the claim. Hartford was not given a reasonable opportunity to protect its subrogation rights."

■ Under the circumstances, at most, Hartford needed to inform defendant of the policy coverage and of the policy requirement of consent to settlement and that it needed time to investigate the claim to determine if it might be interested in pursuing its right to subrogation. A final determination of whether it would consent to the settlement could be made only when it had fully investigated the claim. See paragraph two of the syllabus of *McDonald, supra.* There is no reasonable basis for the contention that the investigation needed to be completed in order for Hartford to have responded to defendant's inquiry as to coverage. Nevertheless, Hartford investigated the claim instead of timely responding to defendant's coverage inquiry, thereby, according to the July letter, giving defen-

dant the impression that Hartford was not interested in pursuing any rights against Jarvis.[2]

The evidence is conflicting, and the trial court failed to determine when the June letter was received and, likewise, did not determine whether Hartford had a reasonable period of time to respond to that inquiry as required by the Supreme Court mandate. The findings of fact made by the trial court would not be unreasonable if *McDonald* were applicable, which the trial court applied here. However, this is an application of an incorrect legal principle, since the Supreme Court stated that "reliance on *McDonald* was misplaced." *Hartford, supra,* 62 Ohio St.3d at 235, 581 N.E.2d at 529. The weighing of the evidence, which the trial court did, was not unreasonable under *McDonald* but, rather, the trial court made an error of law by applying the incorrect legal standard. However, defendant's second assignment of error is not well taken, since the error is the erroneous application of law and failure to make mandated determinative factual findings, rather than weight of the evidence.

By her third assignment of error, defendant contends that the trial court committed reversible error in excluding certain evidence which was relevant to whether defendant should be precluded from receiving underinsured motorist benefits pursuant to Hartford's policy. Defendant argues that the trial court improperly excluded information from the agent as to his knowledge of the amount of underinsured motorist coverage and the policy exclusions, arguing its relevance to whether Hartford assisted defendant in the protection of its subrogation right and whether Hartford had a reasonable time to inform defendant of the policy exclusions, and whether estoppel applies. Defendant also argues that the information is relevant to the timing of the settlement.

The Ohio Supreme Court stated in *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130, certiorari denied (1968), 390 U.S. 1024, 88 S.Ct. 1409, 20 L.Ed.2d 281, that "[t]he trial court has broad discretion in the admission and exclusion of evidence and unless it clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere."

The information related to the agent's knowledge of the amount of underinsured motorist coverage and the policy exclusions is relevant to the ability of Hartford to respond, especially to the June letter. Such knowledge of its agent is relevant to whether Hartford had a reasonable period of time to respond to defendant's inquiry as to coverage.

---

2. Although it is arguable that defendant is not prejudiced since she now is in no worse condition than she would be if there were no underinsured motorist coverage, such issue is precluded by the Supreme Court mandate and the law-of-the-case doctrine.

Defendant also argues that the trial court improperly excluded her testimony as to whether the agent was aware of her attempts to discover the policy, and why she settled with Motorist and executed a release. The agent's knowledge of her attempts to discover whether underinsured motorist coverage was contained in the policy is also relevant to whether Hartford had a reasonable period of time to respond. The information as to the settlement and the release are also relevant to the issue that Hartford did not respond to her initial inquiry as to the policy limitations in the June letter. The trial court improperly excluded this evidence as being irrelevant. Accordingly, defendant's third assignment of error is well taken.

For the foregoing reasons, defendant's first and third assignments of error are sustained, the second assignment of error is overruled, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PETREE and DESHLER, JJ., concur.