HARDRIVES PAVING AND CONSTRUCTION COMPANY, INC., Appellee,

v.

HARTFORD STEAM BOILER INSPECTION AND
INSURANCE COMPANY, Appellant.

[Cite as *Hardrives Paving & Constr. Co., Inc. v. Hartford Steam Boiler Inspection & Ins. Co.* (2000), 137 Ohio App.3d 270.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 98–T–0134.

Decided April 3, 2000.

272

*Samuel M. Pipino,* for appellee.

*William J. Brown* and *Robert G. Schuler;* *Thomas B. Keegan* and *Edward W. Gleason,* for appellant.

---

JOSEPH E. O'NEILL, Judge.

This appeal is taken from a final judgment of the Trumbull County Court of Common Pleas. Appellant, Hartford Steam Boiler Inspection and Insurance Company, appeals from the trial court's grant of summary judgment in favor of appellee, Hardrives Paving and Construction Company, Inc., in an action instituted by the latter against the insurance company.

Hardrives Paving and Construction Company ("Hardrives Paving") is an Ohio corporation engaged in the business of paving and construction. As part of its physical facilities, Hardrives Paving owns and operates an asphalt manufacturing plant in Mineral Ridge, Trumbull County, Ohio. On June 14, 1995, lightning struck a transformer located on or very near the premises of the asphalt plant thereby causing the plant to lose its electrical power. When power was restored, a surge of electricity pulsated through the circuitry controlling the boilers and machinery at the plant. This resulted in significant physical damage to the circuitry.

In addition to the property damage, Hardrives Paving sustained business losses during the period of time that its manufacturing operation was interrupted. The losses stemmed from the fact that the company was unable to produce asphalt for its paving projects while the necessary repairs were being made to the plant. The shutdown occurred at the height of Hardrives Paving's seasonal operations.

Hardrives Paving had two insurance policies that were relevant to this occurrence. The first such policy was with Monroe Guaranty Insurance Company ("Monroe Guaranty"). Monroe Guaranty had previously issued a commercial insurance policy to Hardrives Paving which did not expire until July 18, 1995. As a result, the Monroe Guaranty policy was effective on the date of the lightning strike. The blanket protection afforded by Monroe Guaranty included property coverage. As part of this coverage, Monroe Guaranty was obligated to pay for physical loss of or damage to property covered by the policy. Covered property was defined to encompass buildings and personal property, including the machinery and equipment that were located in such buildings.

The second relevant policy was issued to Hardrives Paving by Hartford Steam Boiler Inspection and Insurance Company ("Hartford Steam Boiler"). This was a boiler and machinery policy that became effective on July 13, 1994, and remained in effect until July 13, 1995. Consequently, this policy was also in force on the day that lightning struck the transformer at the Hardrives Paving plant. Beyond covering the boilers and machinery at the plant, the Hartford Steam Boiler policy also provided business interruption coverage via an endorsement that was an addendum to the basic insurance contract.

The Hartford Steam Boiler policy contained a list of exclusions, including a so-called "lightning exclusion." Pursuant to this exception, Hartford Steam Boiler stated that it would not pay for loss caused by or resulting from "[l]ightning, if coverage for that cause of loss is provided by another policy of insurance or coverage part you have."

Following the lightning strike on June 14, 1995, Hardrives Paving filed a property damage claim pursuant to the terms of its commercial insurance policy with Monroe Guaranty. The insurance company paid $12,981 in settlement of Hardrives Paving's claim, while reserving the right to seek indemnification from Hartford Steam Boiler.

Hardrives Paving also submitted a claim for business interruption coverage pursuant to its policy with Hartford Steam Boiler. The insurance company, however, denied the claim and refused to extend any recovery to Hardrives Paving for the disruption to its business operations.

Not surprisingly, litigation ensued following the respective decisions of the two insurance companies. On May 12, 1997, Monroe Guaranty filed a civil action against Hartford Steam Boiler in the Trumbull County Court of Common Pleas, seeking indemnification of the amount that it had previously paid to Hardrives Paving for property damage. Hartford Steam Boiler filed an answer in which it denied that it was obligated to indemnify Monroe Guaranty.

One month later, on June 12, 1997, Hardrives Paving filed a lawsuit against Hartford Steam Boiler in the Mahoning County Court of Common Pleas.[1] In this action, Hardrives Paving set forth two causes of action in which it requested compensatory and punitive damages based on breach of contract and bad faith on the part of Hartford Steam Boiler for not timely investigating and paying the business interruption claim. Hartford Steam Boiler filed a responsive pleading in which it denied any liability for the business interruption losses sustained by Hardrives Paving as a result of the lightning strike.

The two cases were consolidated in the Trumbull County Court of Common Pleas. With regard to the litigation between Monroe Guaranty and Hartford Steam Boiler, both parties filed motions for summary judgment based on the pleadings and the respective insurance policies that each had issued to Hardrives Paving. In the action between Hardrives Paving and Hartford Steam Boiler, both parties likewise filed competing motions for summary judgment. The trial court heard oral arguments on all of the pending motions.

On July 6, 1998, the trial court issued its ruling on the matter. It concluded (1) that Hartford Steam Boiler was entitled to summary judgment against Monroe Guaranty on the ground that the latter provided primary coverage for lightning damage, whereas the Hartford Steam Boiler policy contained an express lightning exclusion that was operative in light of the coverage afforded by Monroe Guaranty[2]; and (2) that Hardrives Paving was entitled to summary judgment against Hartford Steam Boiler on the issue of business interruption coverage because the lightning exclusion was not applicable in this context and Hardrives Paving had submitted timely notice of the claim to a Hartford Steam Boiler agent.

---

1. In addition to its main facility in Trumbull County, Hardrives Paving owns and operates an asphalt plant in Boardman, Mahoning County, Ohio. Apparently, Hardrives Paving commenced its action against Hartford Steam Boiler in Mahoning County based on the mistaken belief that the lightning struck and damaged the Boardman plant. In reality, it was the Mineral Ridge facility that sustained the lightning damage. The lawsuit was eventually transferred by the Mahoning County Court of Common Pleas to its counterpart in Trumbull County.

2. Monroe Guaranty filed its own notice of appeal from this decision. Our resolution of that appeal is set forth in a separate opinion.

Given the trial court's decision, the case between Hardrives Paving and Hartford Steam Boiler would proceed forward in order to establish the nature and extent of the insurance company's liability for business interruption damages. Consequently, the trial court included Civ.R. 54(B) language in its July 6, 1998 judgment entry, thereby making it a final appealable order.

From this judgment, Hartford Steam Boiler filed a timely notice of appeal with this court. It now asserts the following assignments of error:

"[1.] The trial court erred in granting Hardrives' motion for summary judgment and denying HSB's motion for summary judgment that Hardrives' claim is barred by the lightning exclusion that is contained in HSB's policy.

"[2.] The trial court erred in denying HSB's cross–motion for summary judgment that the amount owing for Hardrives' business interruption claim is zero."

Civ.R. 56(C) sets forth the standard for addressing a motion for summary judgment. In order to prevail, the moving party must establish that (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmovant. Civ.R. 56(C); *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 268, 617 N.E.2d 1068, 1070–1071; *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 65–66, 609 N.E.2d 144, 144–146; *Lindquist v. Dairy Mart/Convenience Stores of Ohio, Inc.* (Nov. 14, 1997), Ashtabula App. No. 97–A–0015, unreported, at 6, 1997 WL 1945289.

An appellate court applies a *de novo* standard of review when determining whether a trial court properly granted summary judgment. *McCallister v. Portsmouth* (1996), 109 Ohio App.3d 807, 810, 673 N.E.2d 195, 196–197; *Burkholder v. Straughn* (June 26, 1998), Trumbull App. No. 97–T–0146, unreported, at 2, 1998 WL 553623.

In its first assignment of error, Hartford Steam Boiler posits that the trial court erred in granting Hardrives Paving's motion for summary judgment. By granting this motion, the trial court effectively determined that the lightning exclusion contained in the Hartford Steam Boiler policy was inapplicable to Hardrives Paving's claim for business interruption damages. This proposition rises or falls exclusively on the interpretation of the lightning exclusion in the Hartford Steam Boiler policy.

As described previously, Hartford Steam Boiler issued a boiler and machinery policy for the protection of such equipment at Hardrives Paving's physical facilities. Section B of the primary "Boiler and Machinery Coverage Form"

contained a list of exclusions wherein Hartford Steam Boiler disavowed any liability for certain occurrences. Among other things, the list stated that Hartford Steam Boiler would not pay for loss caused by or resulting from:

"f. Lightning, if coverage for that cause of loss is provided by another policy of insurance or coverage part you have[.]"

Attached and incorporated into the Hartford Steam Boiler policy was Endorsement L. This endorsement was entitled "Combined Business Interruption and Extra Expense Actual Loss." Pursuant to this addendum, Hartford Steam Boiler agreed to pay Hardrives Paving for its "actual loss" from a total or partial interruption of business and the "extra expense" necessarily incurred in operating the business during the period of restoration following an accident that resulted in physical damage to covered property.

Section B of Endorsement L set forth exclusions applicable to the business interruption coverage. Section B read in part: "All the Exclusions of the Boiler and Machinery Coverage Form apply to loss or expense under this coverage[.]" As a result, all of the exclusions listed in the primary "Boiler and Machinery Coverage Form" were also applicable to the business interruption coverage provided for by Endorsement L. Obviously, the aforementioned lightning exclusion was one such exclusion, which, as a general matter, was incorporated by reference into Endorsement L.

During the summary judgment exercise, it was uncontroverted that a lightning strike caused the damage to the asphalt plant on June 14, 1995. All of the parties agreed on this basic fact.

In the trial court, both the insured and the insurer requested judgment as a matter of law. Hardrives Paving argued that it was entitled to business interruption coverage under the express terms of the policy. Although acknowledging that Endorsement L provided for such coverage as a general matter, Hartford Steam Boiler asserted that the lightning exclusion was triggered because the plant shutdown was attributable to the lightning strike.

The trial court disagreed with Hartford Steam Boiler regarding the applicability of the lightning exclusion, thereby granting summary judgment on behalf of Hardrives Paving. On appeal, this court is presented with the same question posed to the trial court, to wit, did the lightning exclusion apply to bar the extension of business interruption coverage to Hardrives Paving?

The crux of Hartford Steam Boiler's argument rests on the insurance policy that Hardrives Paving had with Monroe Guaranty. As described earlier, the Monroe Guaranty policy encompassed commercial property coverage within its blanket protection, and it included lightning as a specified "cause of loss" for

which coverage was provided. Thus, it was undisputed that lightning was a covered cause of loss under the terms of the Monroe Guaranty policy.

From Hartford Steam Boiler's perspective, the lightning exclusion was triggered by virtue of the fact that lightning was explicitly referenced as a covered cause of loss in the Monroe Guaranty policy. Again, the lightning exclusion stated that Hartford Steam Boiler would not pay for loss caused by or resulting from "[l]ightning, if coverage for that cause of loss is provided by another policy of insurance or coverage part" issued to Hardrives Paving. Pursuant to this exclusion, Hartford Steam Boiler maintains that it had no contractual duty to extend business interruption coverage to Hardrives Paving because Monroe Guaranty was already providing "coverage" for that particular "cause of loss" (*i.e.*, lightning). Since the Monroe Guaranty policy was a comprehensive property damage policy, Hartford Steam Boiler was reading the word "coverage" in the lightning exclusion to mean any type of insurance protection, regardless of its nature.

By contrast, Hardrives Paving asserts that the lightning exclusion was inapplicable because it did not maintain business interruption coverage with Monroe Guaranty or any other insurance carrier. According to Hardrives Paving, the intent of the lightning exclusion in the Hartford Steam Boiler policy is to avoid duplicative coverage for a specific type of loss. In this case, the loss in question was the monetary damages associated with the interruption of Hardrives Paving's business in the wake of the lightning strike. Hardrives Paving, in essence, reads the lightning exclusion to deny coverage only when the insured has other similar coverage (*e.g.*, property damage, business interruption, etc.) with another insurance carrier. In granting summary judgment for Hardrives Paving, the trial court agreed with its interpretation of the lightning exclusion as that language was incorporated into Endorsement L of the Hartford Steam Boiler policy.

■ Upon review, we conclude that the trial court's decision was predicated upon a correct analysis of the lightning exclusion as it operated in the Hartford Steam Boiler policy. Notwithstanding Hartford Steam Boiler's assertion to the contrary, this interpretation of the lightning exclusion does not contravene the plain language of the policy that it issued to Hardrives Paving.

■ In Ohio, a central canon of insurance contract construction is that language reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer. *U.S. Fid. & Guar. Co. v. Lightning Rod Mut. Ins. Co.* (1997), 80 Ohio St.3d 584, 586, 687 N.E.2d 717, 719–720, citing *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. Thus, the Hartford Steam Boiler insurance policy, including Endorsement L, must be construed in favor of Hardrives Paving.

■ Our reading of the policy leads us to the conclusion that the lightning exclusion is *context specific*. As indicated earlier, the lightning exclusion was stated in full in Section B of the primary "Boiler and Machinery Coverage Form." In this context, the word "coverage" as it appeared in the lightning exclusion referred to Hartford Steam Boiler's promise to pay for direct damage to covered property by a covered cause of loss.

Of course, lightning was excluded as a covered cause of loss if coverage (*i.e.*, payment for damage to covered property) was provided by another policy of insurance or coverage part issued to Hardrives Paving. The Monroe Guaranty policy provided such coverage for losses caused by or resulting from lightning.

The lightning exclusion, however, took on a different meaning in Endorsement L wherein Hartford Steam Boiler provided business interruption coverage to Hardrives Paving. In the context of Endorsement L, the word "coverage" referred to Hartford Steam Boiler's obligation to pay for the actual loss and extra expense incurred by Hardrives Paving during a period of restoration following an interruption to its business. The lightning exclusion of the primary "Boiler and Machinery Coverage Form" was incorporated by reference into the exclusions of Endorsement L. Upon being incorporated into Endorsement L, though, the word "coverage" as it appeared in the lightning exclusion no longer referred to physical damage to covered property. Instead, in this context, coverage meant the losses associated with an interruption to Hardrives Paving's business (*i.e.*, business interruption coverage).

Hartford Steam Boiler argues that such a reading of the lightning exclusion in Endorsement L ignores the fact that when there is no coverage under a property insurance policy for a given peril, there can be no supplemental coverage for consequential damages flowing from that peril. In other words, if there can be no recovery for the property portion of the loss because the particular peril was not covered, then there can be no coverage for such consequential damages as business interruption losses. Applying this rationale to the instant matter, Hartford Steam Boiler asserts that the lightning exclusion applies to the business losses incurred by Hardrives Paving because the property portion of the policy excluded lightning as a covered cause of loss.

As to this point, we would simply observe that the lightning exclusion in the Hartford Steam Boiler policy was not absolute, but rather was conditional. Hartford Steam Boiler did not absolutely exclude recovery for any losses associated with a lightning strike under all circumstances. Instead, lightning was excluded as a covered cause of loss only if coverage for that cause of loss was "provided by another policy of insurance or coverage part" maintained by Hardrives Paving.

Thus, if the Monroe Guaranty policy had not covered property damage caused by lightning, the lightning exclusion would have been ineffective and Hartford Steam Boiler would have been obliged to pay a proportionate share of such damage. It is, therefore, disingenuous for Hartford Steam Boiler to suggest that Hardrives Paving could never receive compensation for lost profits and continuing expenses during a period of restoration occasioned by a lightning strike because that particular natural phenomenon could never be a covered peril under the Hartford Steam Boiler policy. Indeed, lightning could be covered by the policy depending on the circumstances.

In conclusion, we determine that the trial court properly construed the effect of the lightning exclusion as it related to the business interruption coverage provided for by Endorsement L. The first assignment is without merit.

In its second assignment of error, Hartford Steam Boiler asserts that the trial court erred by denying its motion for summary judgment on the ground that the amount owed on Hardrives Paving's business interruption claim was zero. During the proceedings below, Hartford Steam Boiler set forth a twofold basis upon which it purported to be entitled to judgment as a matter of law: (1) the business interruption claim was barred by the lightning exclusion; and (2) even assuming that the business interruption coverage was applicable, Hardrives Paving was entitled to nothing because its claim was tardily filed. The former argument was addressed in the first assignment of error, while the latter is raised in this assignment.

Under the terms of Endorsement L, Hartford Steam Boiler agreed to pay for business interruption losses and expenses during the period of restoration following an accident. The "period of restoration" was defined to begin at the time of the commencement of liability and ending on the date when the damaged property was repaired or replaced.

Endorsement L also contained a section entitled "Conditions." One such condition stated as follows:

"4. Notice of 'Accident' and Commencement of Liability

"At our expense, you must immediately give notice of 'accident' to any of our offices. You must confirm that notice in writing. Our liability under this coverage starts:

"a. At the time of the 'accident'; or

"b. 24 hours before we receive notice of 'accident';

"whichever is later."

The issue raised by this assignment is whether Hardrives Paving timely filed a claim for business interruption coverage following the lightning strike. Hartford

Steam Boiler argues that it did not receive notice of the accident until well after the damaged machinery had been repaired. Thus, Hartford Steam Boiler contends that any liability it might have incurred did not commence until after the ending date of the period of restoration, thereby entitling Hardrives Paving to nothing on its business interruption claim.

In support of its position, Hartford Steam Boiler submitted an affidavit from Bruce North ("North") during the summary judgment process in the trial court. In this affidavit, North averred that he was a field claims adjuster for Hartford Steam Boiler at the time of the June 14, 1995 accident. North indicated that Hartford Steam Boiler did not receive notice of the accident until August 10, 1995. On that date, Jerry Kernan ("Kernan"), an insurance agent, called Hartford Steam Boiler on behalf of Hardrives Paving to report the loss due to the lightning strike. Hartford Steam Boiler sent a claims investigator to Hardrives Paving's place of business on August 18, 1995. The investigator, however, discovered that the plant had returned to service on June 27, 1995 after all of the necessary repairs had been made.

Based on the North affidavit, Hartford Steam Boiler contended that the period of restoration ended for purposes of business interruption liability on the date that the damaged property was repaired, to wit, June 27, 1995. In contrast, Hartford Steam Boiler's liability did not commence until twenty-four hours before it received notice of the accident on August 10, 1995. Under this scenario, Hartford Steam Boiler owed nothing on the claim because it had not received timely notice of the business interruption during the period of restoration.

In the summary judgment proceedings below, Hardrives Paving countered with an affidavit from its company vice president, Edward Panutti ("Panutti"). In this affidavit, Panutti averred that Hardrives Paving had obtained its boiler and machinery insurance policy, including business interruption coverage, from Hartford Steam Boiler in 1994. Panutti further indicated that Hardrives Paving obtained such insurance through Kernan, who held himself out as an agent of Hartford Steam Boiler. Panutti also stated that he notified Kernan by telephone about the lightning strike on the same day of the accident, and he requested that Kernan contact the applicable insurance companies regarding the damage caused by the lightning.

Based on the Panutti affidavit, Hardrives Paving took the position that its notice to Kernan was equivalent to providing notice directly to Hartford Steam Boiler due to the agency relationship that ostensibly existed between the insurance agent and the company. Since it notified Kernan on the day of the accident, Hardrives Paving maintained that Hartford Steam Boiler's liability for business interruption losses and expenses commenced on June 14, 1995, and continued until the necessary repairs had been made later that month.

The trial court apparently agreed with the position advanced by Hardrives Paving. Without articulating its precise reasoning, the trial court found in its judgment entry that "the notice of business interruption was properly made to HSB representatives in [a] timely manner and in accordance with case law."

Hartford Steam Boiler now challenges this decision on appeal. The question presented is whether notice of loss given to an insurance agent is sufficient to constitute notice to the insurance company with whom the agent is involved in an agency relationship.

The parties refer to two Revised Code sections that may be germane to this issue. R.C. 3929.27 provides:

"A person who solicits insurance and procures the application therefor shall be considered as the agent of the party, company, or association thereafter issuing a policy upon such application or a renewal thereof, despite any contrary provisions in the application or policy."

The second statute referenced by the parties is R.C. 3905.01(C). It formerly read in part: "An insurance company shall be bound by the acts of the person named in the license within that person's apparent authority as its agent." R.C. 3905.01 was amended effective June 30, 1998, and this language no longer exists in the current version of the statute.

Hardrives Paving invokes these two statutes for the proposition that if an insurance agent acting within the scope of his or her employment receives proper notice of a claim, then timely notice of the loss is considered to have been received by the insurance company. In support of this principle, Hardrives Paving cites the decision of the Tenth District Court of Appeals in *Hartford Cas. Ins. Co. v. Easley* (1993), 90 Ohio App.3d 525, 630 N.E.2d 6. The court in *Easley* resolved a similar scenario in the following manner:

"In this case, the trial court determined that Hartford received notice of defendant's underinsurance claim on August 10, 1987. However, the trial court also determined that Jackson 'dropped off *a notice of loss* for the underinsured motorist claim with Murray and Sons Insurance Agency, Hartford's local agent on Saturday, August 8, 1987.' (Emphasis added.) * * * If Jackson 'dropped off a notice of loss' to the agent, then Hartford had notice at that time, since notice to its agent is notice to Hartford. A person who procures insurance is the agent of the company, not of the insured, pursuant to R.C. 3929.27[.]

"* * *

"This relationship subsists with respect to making claims or other communications to the company at least in the absence of notice to the insured to the contrary. See, also, R.C. 3905.01(C), which provides that an insurance company

is 'bound by the acts' of its licensed agent 'within his apparent authority as its agent.' Since Murray and Sons Insurance Agency * * * was the agent of Hartford, its knowledge is imputed to Hartford because notice received by the agent within an agent's authority and received during the scope of employment is considered received by the company." (Citations omitted.) *Easley*, 90 Ohio App.3d at 531, 630 N.E.2d at 10. See, also, *Helman v. Hartford Fire Ins. Co.* (1995), 105 Ohio App.3d 617, 623, 664 N.E.2d 991, 995 (citing *Easley* for the proposition that notice is considered to have been received by the insurance company when the company's insurance agent receives proper notice of a claim).

Hartford Steam Boiler asserts that *Easley* was wrongly decided and that the Tenth District's reliance on R.C. 3929.27 and 3905.01(C) was misplaced. With regard to R.C. 3929.27, Hartford Steam Boiler suggests that this statute simply establishes that a person who solicits insurance and procures an application therefor is an agent of the insurance company for the purpose of such solicitation and procurement. In other words, R.C. 3929.27 does not make the person an agent of the company for all purposes, but only those connected with the negotiation of the policy. As for the former version of R.C. 3905.01(C), Hartford Steam Boiler maintains that this code section merely codifies the common-law requirement that a principal may be bound by the acts of its agent if such agent is acting within his or her apparent authority.

Upon review of the statutes, it is apparent that neither R.C. 3929.27 nor the prior version of R.C. 3905.01(C) expressly mandates that notice of loss given to an insurance agent is sufficient to constitute notice to the insurance company. In this respect, we agree with the position taken by Hartford Steam Boiler.

■■ Having said this, we must also point out what Hartford Steam Boiler presumably recognizes, to wit, notwithstanding statutory law, common-law tenets governing the principal/agent relationship still apply. A principal can be bound by the acts of its agent if the agent acts with apparent authority and within the proper scope of the agency relationship. Regardless of R.C. 3929.27 and the former version of R.C. 3905.01(C), therefore, we agree with the underlying conclusion reached in *Easley*. Specifically, when an insured gives notice of a potential claim to a local insurance agent, such notice may sometimes be imputed to the parent insurance company under a theory of constructive notification if the agent was acting within the scope of his apparent authority in the context of the agency relationship.

In the case at bar, the trial court found that "the notice of business interruption was properly made to HSB representatives" in a timely fashion. From this, we can only surmise that the trial court determined that Kernan was indeed an authorized Hartford Steam Boiler insurance agent and that Kernan was acting

within the scope of his employment when he received notice of the lightning strike from Panutti on June 14, 1995.

After reviewing the record, we cannot conclude that the trial court's resolution of this question by way of summary judgment was correct as a matter of law. Under Civ.R. 56(C), summary judgment is appropriate only when no genuine issue of material fact remains to be litigated because reasonable minds could come to only one conclusion based on the evidence.

In this case, there appear to be genuine factual issues regarding whether Hardrives Paving's notice to Kernan on the day of the accident could be imputed to Hartford Steam Boiler based on a principal/agent relationship. The record does not contain any evidentiary materials from Kernan (*i.e.*, an affidavit or a deposition). Based on the current state of the evidentiary record, therefore, there are genuine factual issues as to the following: (1) whether Kernan was an authorized insurance agent of Hartford Steam Boiler; (2) whether Kernan had the apparent authority to receive notice of a claim on behalf of Hartford Steam Boiler; and (3) whether Kernan gave any indication to Panutti on June 14, 1995, that the latter should notify Hartford Steam Boiler directly regarding the loss associated with the lightning strike.

In other words, the questions presented are whether Kernan was actually an authorized local agent of Hartford Steam Boiler and, if so, whether he had the authority to receive notice of the business interruption claim on behalf of the insurance company. From this court's perspective, there are genuine factual issues as to Kernan's agency relationship with Hartford Steam Boiler and the proper scope of his authority.

As an aside, we would note that the evidence adduced during the summary judgment exercise did not reveal a dispute as to the material fact of whether timely notice of the claim was given to Kernan by Hardrives Paving following the lightning strike. In this regard, the parties introduced the respective affidavits of Panutti and North. In his affidavit, Panutti averred that he notified Kernan about the lightning strike immediately after it happened on June 14, 1995. This was essentially uncontroverted. Hartford Steam Boiler did not introduce any evidence during the summary judgment exercise to contradict that Hardrives Paving had contacted Kernan on the day of the accident. Rather, in his affidavit, North simply stated that Hartford Steam Boiler received a phone call from Hardrives Paving's insurance broker (presumably Kernan) on August 10, 1995, advising the insurance company about the loss associated with the lightning strike. North further averred that this was the first notice of loss that Hartford Steam Boiler received.

Based on the North affidavit, it seems that Kernan did not provide notice of the claim to Hartford Steam Boiler until August 10, 1995. Under the reasoning

of *Easley,* however, the notice of the claim for business interruption damages which Kernan received on June 14, 1995, would be imputed to Hartford Steam Boiler as of that date, assuming *arguendo* that Kernan was acting within his proper authority as an authorized agent of the insurer. If so, then, there would be no genuine issue of material fact as to whether or not Hartford Steam Boiler received timely notice of the loss.

Regardless, however, the trial court should not have resolved the question of Hardrives Paving's claim for business interruption coverage through summary judgment. As we have indicated, there were genuine factual issues surrounding Kernan's agency relationship with Hartford Steam Boiler and the proper scope of his authority to receive notice of claims on behalf of the insurance company. The second assignment is well taken.

Based on the foregoing analysis, the first assignment of error lacks merit, but the second assignment is meritorious to the extent indicated. Accordingly, the judgment of the trial court is affirmed in part and reversed in part, and the matter is hereby remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

FORD, P.J., and WILLIAM M. O'NEILL, J., concur.

JOSEPH E. O'NEILL, J., retired, of the Seventh Appellate District, sitting by assignment.