{¶ 63} For the reasons that follow, although I would also reverse the declaratory judgment rendered herein and remand this cause, I do not regard the issue of prejudice due to the Nicholases' failure to have notified Mount Vernon of the lawsuit against them as having yet been adjudicated. I would remand this cause for *Page 13 
consideration of whether this failure of notice prejudiced Mount Vernon within the contemplation of Ferrando v. Auto-Owners Mut. Ins.Co., 98 Ohio St.3d 186, 208, 2002-Ohio-7217, 781 N.E.2d 927, ¶¶ 89-90.
 I — No Agency Under R.C. 3929.27. {¶ 64} The first step in the analysis is whether the Nicholases provided notice to Mount Vernon of the lawsuit filed against them by Kohlhurst, which resulted in a judgment in excess of the amount of their liability insurance policy limit. My interpretation of R.C. 3929.27
differs from that set forth in the majority opinion. That statute provides as follows:
 {¶ 65} "A person who solicits insurance and procures the application therefor shall be considered as the agent of the party, company, or association thereafter issuing a policy upon such application or a renewal thereof, despite any contrary provisions in the application or policy."
 {¶ 66} In my view, McColloch-Baker procured the application from the Nicholases for an umbrella policy, which was thereafter issued by Mount Vernon, thereby triggering application of R.C. 3929.27. Although McColloch-Baker became the agent of Mount Vernon by application of the statute, the statute does not define the scope of the agent's authority.Damon's Missouri, Inc. v. Davis (1992), 63 Ohio St.3d 605, 609,590 N.E.2d 254.
 {¶ 67} The predecessor to R.C. 3929.27, General Code Section 9586, was substantially identical, providing as follows:
 {¶ 68} "A person who solicits insurance and procures the application therefor, *Page 14 
shall be held to be the agent of the party, company or association, thereafter issuing a policy upon such application or a renewal thereof, anything in the application or policy to the contrary notwithstanding."
 {¶ 69} That statute was construed in Pateras v. Standard AccidentInsurance Co., 37 Ohio App. 383, 387 (Cuyahoga App., 1929):
 {¶ 70} "Plaintiff relies upon this section, but we think a proper construction of it is simply that the person who solicits insurance and procures the application is the agent of the insurance company for the purpose of such solicitation and procuration. Mechanics Traders Ins.Co. v. Himmelstein, 24 Ohio App., 29, 155 N.E., 806; Royal Ins. Co. v.Silberman, 24 C. C. (N.S.), 511, 34 C. D., 737."
 {¶ 71} I am not aware of any authority supporting a contrary construction. Therefore, I will follow the holding in Pateras, and conclude that the agency arising by operation of R.C. 3929.27 is limited to the procuring of the insurance coverage, and does not extend to subsequent activities, like notice of claims.
 II — No Apparent Authority to Accept Notice of a Claim or Suit. {¶ 72} The question then becomes whether McColloch-Baker was an apparent agent of Mount Vernon — that is, whether McColloch-Baker had apparent authority to accept notice of claims on behalf of Mount Vernon. "When an insured gives notice of a potential claim to a local insurance agent, such notice may sometimes be imputed to the parent insurance company under a theory of constructive notice if the agent was acting within the scope of his apparent authority in the context of an agency relationship." Harddrives Paving and Construction Co. v. Hartford SteamBoiler *Page 15 Inspection and Ins. Co., 137 Ohio App.3d 270, 282, 738 N.E.2d 463.
 {¶ 73} Because of the realities of the marketplace for homeowners' insurance, I find it to be a close call whether, from the point of view of the Nicholases, McColloch-Baker had apparent authority to act for Mount Vernon for the purpose of receiving notice of a claim. Certainly Jeremy McColloch never did anything to disabuse the Nicholases of any reason to believe that McColloch-Baker had authority to receive notice of the claim, having told a worried Dimitri Nicholas, concerned about a letter from the primary carrier that there might be an excess judgment, that there was plenty of coverage and that he did not need to worry, that it was all taken care of, with $4,500,000 in coverage.
 {¶ 74} But the policy issued by Mount Vernon belies the existence of apparent authority, on the behalf of its agent, to accept notice of a claim or suit, by differentiating clearly between notice of a loss, which can be transmitted through the agent, and notice of a claim or suit, which must be transmitted to Mount Vernon:
 {¶ 75} "These are things you must do for us. We may not provide coverage if you do not assist us.
 {¶ 76} "Notify us of a loss. If something happens that might involve this policy, you must let us know promptly. Send written notice to us orour agent. Include the names and addresses of the injured and witnesses. Also include the time, place and account of the accident.
 {¶ 77} "Notify us of a claim or suit. If a claim or suit is filed against you, notify your underlying insurer and us right away. You must send us every demand, notice, summons or other process you receive." (Emphasis added.) *Page 16 
 {¶ 78} I conclude that McColloch-Baker was without apparent authority to accept notice of a claim or suit on behalf of Mount Vernon. Therefore, I agree that the trial court erred in determining that the Nicholases did not breach their notice requirements.
 {¶ 79} The policy does not contradict the proposition that McColloch-Baker had authority to accept notice of a "loss," being defined as something happening that might involve the policy. But there is nothing in this record to support the factual proposition that Mount Vernon was ever on notice, actual or constructive, that McColloch-Baker was involved in any way with the policy Mount Vernon issued. If the application Mount Vernon received from the Nicholases had any reference to McColloch-Baker therein, or even if the documentation forwarding that application contained any references to McColloch-Baker, then there might be a basis for inferring that Mount Vernon was aware that McColloch-Baker was being held out as Mount Vernon's agent, but there is nothing in the record on this point. Therefore, I conclude that there is no basis in this record for finding that McColloch-Baker had apparent authority to act on Mount Vernon's behalf.
 III — Remaining Issue Under Ferrando. {¶ 80} When an insured breaches its duty of notice, Ferrando v.Auto-Owners Mut. Ins. Co., supra, establishes a second analytical step. "If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut." Id., ¶ 90 *Page 17 
(emphasis in original.)
 {¶ 81} The trial court never reached the second step of theFerrando analysis, having concluded the Nicholases satisfied their duty of notice by notifying McColloch-Baker of the claim against them, who was acting as the agent, or apparent agent, of Mount Vernon for that purpose. In my view, it is premature for us to reach a factual issue that the trial court never reached, even though prejudice is presumed under Ferrando v. Auto-Owners Mut. Ins. Co., supra. As the Nicholases note in their brief, there are provisions in Mount Vernon's policy that bear upon this issue, and the absence of any evidence of prejudice, under the circumstances of this case, might, at least arguably, give rise to a reasonable inference that Mount Vernon was not prejudiced. In any event, it is a general principle of appellate jurisprudence that an appellate court will not rule on a question that the trial court has not yet had an opportunity to address. See Mills-Jennings, Inc. v. Dept. ofLiquor Control (1982), 70 Ohio St.2d 95, 99; Keeton v. Motorists Mut.Ins. Co., Franklin App. No. 01AP-1234, 2003-Ohio-1451, ¶ 36.
 "IV — Conclusion {¶ 82} Like my colleagues, I would reverse the judgment of the trial court and remand this cause for further proceedings. But I would specifically mandate that the trial court consider the issue of whether Mount Vernon was prejudiced by the Nicholases' failure to have provided it with notice of the claim against it. *Page 1