DECISION AND JUDGMENT ENTRY
{¶ 1} Petitioner-Appellant Scioto County Child Support Enforcement Agency (CSEA) appeals the judgment rendered in the Scioto County Court of Common Pleas, which resulted in the forfeiture of certain personal property to the State of Ohio by Defendant John F. Lilly, II.
 {¶ 2} The trial court held a hearing pursuant to R.C. 2923.32(E)(3) for the determination of the rights of third parties in connection with the forfeited property and held that none of the petitioners, including the CSEA, demonstrated any right or interest in the property greater than that of defendant at the time of his corrupt activity. Therefore, the court reinstated its prior order that the property be forfeited to the state.
 {¶ 3} The CSEA presents two arguments in support of its claim: 1) the trial court's determination that the CSEA did not have a legal right, title, or interest in the property which was either vested in the CSEA or was superior to the right, title, or interest of defendant at the time of his illegal activity, was against the manifest weight of the evidence and contrary to law; and 2) that since defendant had not paid past due child support, R.C. 3123.67 created a personal property lien in favor of defendant's children that attached to the property forfeited to the state.
 {¶ 4} We find that both arguments lack merit and affirm the judgment of the trial court.
 I. Proceedings Below {¶ 5} Our review of the record reveals the following facts pertinent to the instant appeal.
 {¶ 6} Defendant John F. Lilly, II, was at one time a practicing physician who routinely treated patients and prescribed medications. At some point, defendant decided to stop the legitimate practice of medicine and instead began the profitable business of selling medical prescriptions for cash on a "walk-in" basis. Eventually, the Southern Ohio Law Enforcement Drug Task Force (DTF) became aware of defendant's prescriptions for cash operation and began an investigation into it.
 {¶ 7} In September 1999, the DTF conducted surveillance outside of defendant's office. There, the DTF, on several occasions, observed groups of people lined up outside the front entrance awaiting defendant's arrival. The DTF also observed carloads of individuals driving to defendant's office, entering the building for a brief time, and then exiting with prescriptions. Based on these observations, the DTF concluded that defendant was engaged in illegally selling prescriptions for cash.
 {¶ 8} The DTF continued its investigation over the next six months. During this time, on numerous occasions, undercover agents posing as "patients" bought prescriptions from defendant. These purchases ranged in dollar amount from $200 to $600. Subsequently, in March 2000, defendant was arrested, and a search of his home and office resulted in the seizure of certain personal property, including $497,000 in cash that was found stored away in shoe boxes underneath stairs leading to the home's basement, as well as in defendant's office. On March 17, 2000, the Scioto County Grand Jury indicted defendant on forty-eight counts of criminal activity, including a charge of engaging in a pattern of corrupt activity, a violation of Ohio's Racketeering Influenced and Corrupt Organizations (RICO) statute. R.C. 2923.32. Pursuant to R.C. 2923.32(B)(4)(a), the indictment included a specification that certain personal property which defendant had an interest in, that was either derived from or used in defendant's corrupt activity, be forfeited to the state. Among the property listed in the forfeiture specification was the $497,000 in cash which investigators had seized.
 {¶ 9} On January 31, 2001, defendant pled guilty to count one of the indictment, engaging in a pattern of corrupt activity, a first-degree felony in violation of R.C. 2923.32(A)(1). During his sentencing hearing, defendant admitted, and the court found, that the property forfeited to the state, including the $497,000 in cash, had been derived from defendant's illegal pattern of corrupt activity. The court sentenced defendant to three years in the custody of the Ohio Department of Rehabilitation and Corrections, fined defendant $20,000, and ordered that defendant permanently surrender his license to practice medicine. Furthermore, the court ordered that the property listed on the indictment be forfeited to the state, pending further disposition as to the rights of third parties.
 {¶ 10} Petitioner-Appellant, the Scioto County Child Enforcement Agency, filed a petition with the trial court for a hearing pursuant to R.C. 2923.32(E)(2) on behalf of Emily Beale Lilly Mueller, defendant's ex-wife[1]. The CSEA claimed an interest in the forfeited property as a result of a child support order against defendant through the Scioto County Court of Common Pleas. Defendant had not fulfilled his obligation under that support order, and a significant arrearage of $40,417.93 had accrued as of May 31, 2001. On March 12, 2001, pursuant to R.C. 2923.32(E)(1), the court sent notice of the forfeiture hearing to eleven different parties known or believed to have an interest in the forfeited property.
 {¶ 11} On November 11, 2001, the court held a hearing pursuant to R.C. 2923.32(E)(3) to determine if any of the third parties had an interest greater than that of defendant in the property forfeited to the state. The CSEA was present at the hearing and submitted the following evidence in support of its claim: Dana Benjamin, a pharmacist at Smith Drugs, presented documentation of prescriptions filled by Smith Drugs during the period which covered the dates of the alleged criminal activity as well as periods outside the criminal activity. Benjamin testified that in addition to the scheduled substances which defendant was prescribing, the pharmacy filled prescriptions for defendant that were not controlled substances. From this, the CSEA argued that some of the forfeited cash was derived from the legal sale of legitimate prescriptions and, therefore, not subject to forfeiture.
 {¶ 12} After hearing the evidence, the trial court concluded that the CSEA had not demonstrated any vested right, title, or interest in the property superior to defendant's at the time of his corrupt activity. R.C. 2923.32(E)(4). Rather, the court found that defendant merely had an obligation to pay the CSEA money. The court further found that the forfeited personal property had, in fact, been derived from, or realized through, defendant's conduct in violation of R.C. 2923.32. Therefore, the court reinstated its prior order that the property be forfeited to the state.
 II. The Appeal {¶ 13} The CSEA timely filed this appeal, raising a single assignment of error for our review.
 {¶ 14} "The decision by the trial court was against the manifest weight of the evidence and contrary to law."
 {¶ 15} The CSEA's sole assignment of error raises two challenges to the trial court's determination. First, it argues that defendant's children had a property interest superior to that of defendant in the forfeited cash, by virtue of a lien created under R.C 3123.67. Second, the CSEA argues that only the cash derived from defendant's predicate acts constituting the charge of engaging in a pattern of corrupt activity was subject to forfeiture. The CSEA maintains that since the indictment listed only twenty-eight specific acts in violation of R.C. 2923.32, and the court found pursuant to defendant's plea that he had committed those twenty-eight acts constituting the charge of engaging in a pattern of corrupt activity, only the money derived from those twenty-eight acts, at most $16,800, could be subject to forfeiture. We disagree with the CSEA's assertions and overrule its assignment of error.
 A.Standard of Review {¶ 16} We will not reverse a judgment based on a preponderance of the evidence if there is "some competent, credible evidence going to all the essential elements of the case." C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. It is well established that as to a challenge that the judgment was against the weight of the evidence, an appellate court will not reverse the lower court's judgment so long as the judgment is supported by some competent, credible evidence. See id.
 {¶ 17} However, such an analysis must be tempered by two long-standing principles. First, our review of the lower court's judgment must be highly deferential; the existence of "some" evidence will be sufficient to sustain the judgment and prevent a reversal. See Barkleyv. Barkley (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989; accordCydrus v. Houser (Nov. 29, 1999), Ross App. No. 98CA2425. Therefore, an appellate court is not to supplant the lower court's judgment of factual matters with its own. See State v. Woods (1985), 25 Ohio App.3d 35, 38,495 N.E.2d 465.
 {¶ 18} Second, because the trier of fact is best able to view the witnesses and observe their demeanor, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; accord Hartford Casualty Insurance Companyv. Easley (1993), 90 Ohio App.3d 525, 630 N.E.2d 6; see, generally,Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. Against this backdrop, we will evaluate the evidence at the lower court's forfeiture hearing.
 B.Review of Forfeiture Hearing {¶ 19} Forfeitures are not favored in law or equity. See State v.Roberts (1995), 102 Ohio App.3d 514, 518, 657 N.E.2d 547. A forfeiture action, although instituted as a criminal penalty, is a civil proceeding. See State v. Price (Apr. 23, 1997), 9th Dist. No. 96CA006484. Courts should strictly construe statutes imposing forfeiture and, when possible, avoid imposing forfeiture as a penalty. See State v. Roberts, supra.
 {¶ 20} Ohio's RICO statute allows for in personam forfeiture proceedings against individuals who retain property used in, intended for use in, derived from, or realized through conduct violating R.C. 2923.32
(i.e., engaging in a pattern of corrupt activity). See R.C. 2923.32(B)(3);State v. Thrower (1991), 81 Ohio App.3d 15, 16, 610 N.E.2d 433, certiorari denied, 62 Ohio St.3d 1434, 578 N.E.2d 826. As such, the state may only advance against the offender's interest in the property, rather than proceed in rem against the property itself. See State v. Thrower, supra. Therefore, the statute outlines a procedure for courts to follow in order to protect the interests that third parties may have in the forfeited property. See R.C. 2923.32(E).
 {¶ 21} R.C. 2923.32(E)(4) provides:
 {¶ 22} "If at a hearing held under division (E)(3) of this section, the court, by a preponderance of the evidence, determines either that the petitioner has a legal right, title, or interest in the property that, at the time of the commission of the acts giving rise to the forfeiture of the property, was vested in the petitioner and not in the defendant * * *, or was superior to the right, title, or interest of the defendant * * *, or that the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of the purchase reasonably without cause to believe that the property was subject to forfeiture under this section, it shall amend, in accordance with its determination, the judgment of forfeiture to protect the rights of innocent persons."
 {¶ 23} The CSEA is entitled to relief under this section only if it can establish that it has a "legal right, title, or interest in the property that, at the time of the offense," was one of the following: (1) vested in the CSEA and not defendant, (2) superior to the right, title, or interest of defendant, or (3) acquired by the CSEA as a bona fide purchaser for value without cause to believe that the property was subject to forfeiture. See State v. Thrower, 81 Ohio App.3d at 17, 610 N.E.2d 433; R.C. 2923.32(E)(4).
 A.The CSEA's Arguments 1. Personal Property Lien Under R.C. 3123.67 {¶ 24} The CSEA argues that defendant's children had an interest in the forfeited monies superior to defendant's at the time of his corrupt activity due to a personal property lien pursuant to R.C. 3123.67. That section reads:
 {¶ 25} "The amount of the arrearage due under the support order determined to be in default pursuant to sections 3123.02 to 3123.071 of the Revised Code, and any amounts due for current support that become an arrearage after the date the default determination was made, shall be a lien against all personal property, including after-acquired property, of the obligor that is situated in this state. The lien may be filed with the county recorder in each county of the state in which the personal property is located. * * *" R.C. 3123.67.
 {¶ 26} The CSEA argues that the legislature intended that "a priority interest in personal property be created upon the default of an obligor and not upon the filing of a lien." The CSEA makes this argument, in part, because neither Mueller, nor the the CSEA, ever filed such a lien against defendant's personal property pursuant to this section. Therefore, according to the CSEA, defendant's children obtained a lien "upon any acquired money, in July, 1998, the month the defendant began failing to satisfy his court-ordered child support." Thus, the children's lien encompassed all personal property, even illegally obtained monies, that defendant possessed after default of his child support obligation. We disagree.
 a. Failure to Raise Below {¶ 27} Initially, we note that the CSEA's argument raises an issue that was not raised at the trial level. An appellate court need not consider an error which was not brought to the trial court's attention. See Robinson v. Robinson, 5th Dist. No. 2002CA00009, 2002-Ohio-5760;Restivo v. Fifth Third Bank of Northwestern Ohio, N.A. (1996),113 Ohio App.3d 516, 521, 681 N.E.2d 484.
 {¶ 28} Our review of the record reveals that the CSEA never raised the argument in the trial court that defendant's children obtained a personal property lien pursuant to R.C. 3123.67. Nor was any evidence presented at the forfeiture hearing to support such a contention. Therefore, because the CSEA failed to raise this argument below, we conclude that it has waived the issue for purposes of this appeal. See Robinson, supra. See Lippy v. Society Natl. Bank (1993), 88 Ohio App.3d 33,623 N.E.2d 108; Stores Realty v. Cleveland (1975), 41 Ohio St.2d 41, 43,322 N.E.2d 629; Van Camp v. Riley (1984), 16 Ohio App.3d 457, 463,476 N.E.2d 1078.
 b. Personal Property Lien {¶ 29} However, assuming arguendo that the CSEA had preserved this issue for appeal, we find no merit to the argument.
 {¶ 30} The CSEA argues that a personal property lien was created on behalf of defendant's children at the moment of his default of his child support obligation. The CSEA suggests that such a personal property lien reaches the cash defendant obtained illegally through his pattern of corrupt activity and that was subsequently forfeited to the state[2]. The CSEA's sole source of support for this assertion is R.C. 3123.67.
 {¶ 31} In preparing its argument, the CSEA apparently failed to research the subsequent sections in the code pertaining to the liens imposed under R.C. 3123.67. For instance, R.C. 3123.70 outlines the priority rules for liens imposed by R.C. 3123.67.
 {¶ 32} "A lien imposed pursuant to sections 3123.66 to 3123.68 of the Revised Code shall have priority over liens, mortgages, security interests, or other types of encumbrances that are associated with the real and personal property subject to the lien imposed by sections 3123.66
to 3123.68 of the Revised Code and that arise after the date the lien isfiled pursuant to those sections. A lien imposed pursuant to sections3123.66 to 3123.68 of the Revised Code shall not have priority over liens, mortgages, security interests, or other types of encumbrances associated with the real and personal property subject to the lien imposed by sections 3123.66 to 3123.68 of the Revised Code that arose onor before the date the lien was filed pursuant to sections 3123.66 to3123.68 of the Revised Code." R.C. 3123.70. (Emphasis added.)
 {¶ 33} This section requires the lien holder to file the lien in order to have priority over subsequent liens. If the lien is filed, it only has priority over those liens that arise after the date of filing. A lien imposed pursuant to 3123.67, "shall not have priority" over liens that "arose on or before the date the lien was filed pursuant to 3123.66
to 3123.68 * * *."
 {¶ 34} The CSEA clearly overlooked this section in preparing its argument. There is nothing in the record that indicates the CSEA filed a lien against defendant's personal property that was forfeited to the state, including any of the $497,000 in cash. However, there is some evidence in the record tending to show that, on March 14, 2000, the state filed a corrupt activity lien with the Scioto County Recorder's Office, covering all the property that was listed in the indictment subject to forfeiture. Therefore, in order for R.C. 3123.67 to have any effect, the CSEA needed to file a lien covering the personal property before March 14, 2000, and thereby gaining priority. See R.C. 3123.70. This is where the CSEA's argument falls short. The CSEA has not filed the lien, if such a lien existed at all. Therefore, if they had a lien, it was subordinate to the state's, as the state filed its lien first. R.C. 3123.70.
 2. Money from Predicate Acts {¶ 35} The CSEA's next argument is that not all of the money forfeited to the state constituted proceeds of defendant's corrupt activities. The CSEA suggests, rather, that only the money that defendant received from the predicate acts that constitute the pattern of corrupt activity is subject to forfeiture. Therefore, the CSEA alleges that only $16,800 of the $470,000 that was seized could be forfeited to the state. We disagree with the CSEA's argument.
 {¶ 36} Ohio's RICO statute provides that "the court shall order any person who is convicted of or pleads guilty to a violation of this section * * * to criminally forfeit to the state any personal or realproperty in which the person has an interest and that was used in the course of or intended for use in the course of a violation of this section, or that was derived from or realized through conduct in violation of this section, including any property constituting an interest in, means of control over, or influence over the enterprise involved in the violation and any property constituting proceeds derivedfrom the violation * * *." R.C. 2923.32(B)(3). (Emphasis added.)
 {¶ 37} It is clear that this statute contemplates the forfeiture of all property "used in," "derived from," or "realized through" conduct that violates R.C. 2923.32. The statute does not limit forfeitures to only the property derived from the predicate acts that make up the offense of engaging in a pattern of corrupt activity, as the CSEA would argue. The defendant admitted that the cash which was seized was "derived from" his pattern of corrupt activity. Therefore, there was some competent evidence which supports the trial court's judgment that the personal property in the indictment, including the cash, be forfeited to the state.
 {¶ 38} Furthermore, R.C. 2923.32(E) sets forth the procedure for courts to implement upon entry of a judgment of forfeiture. R.C. 2923.32(E)(3) describes the hearing courts shall hold and the presentation of evidence at the hearing. R.C. 2923.32(E)(4) states:
 {¶ 39} "If at a hearing held under division (E)(3) of this section, the court, by a preponderance of the evidence, determines either that the petitioner has a legal right, title, or interest in the property that, at the time of the commission of the acts giving rise to the forfeiture of the property, was vested in the petitioner and not in the defendant * * * or was superior to the right, title, or interest of the defendant * * *, or that the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of the purchase reasonably without cause to believe that the property was subject to forfeiture under this section, it shall amend, in accordance with its determination, the judgment of forfeiture to protect the rights of innocent persons."
 {¶ 40} Therefore, at the hearing, the CSEA was required to show that it had an interest in the property superior to defendant's. However, the CSEA is arguing to this Court that a portion of the property forfeited was not subject to forfeiture. Because the forfeiture proceedings are in personam, the judgment forfeited only defendant's interest in the property. See Thrower, supra. The CSEA cannot now challenge the forfeiture of the defendant's interest in the property, but can only assert that it had an interest in the property superior to defendant's. R.C. 2923.32(E)(4). In order for the court to amend its judgment of forfeiture, the CSEA must demonstrate that its interest in the property was greater than defendant's at the time of the corrupt activity. See id. The trial court, relying on competent evidence, found that the CSEA did not have an interest greater than that of defendant at the critical time.
 {¶ 41} As we have explained, our role is not to second-guess the trial court's assessment of the evidence. See Seasons Coal Co., supra. Rather, our analysis concludes with the determination of whether the trial court, in deciding that the CSEA did not have an interest in the forfeited property, relied on some competent, credible evidence. SeeMyers v. Garson, 66 Ohio St.3d 610, 614, 614 N.E.2d at 742.
 {¶ 42} From our review of the record, we hold that the trial court in fact relied on some competent, credible evidence in making its determination. The trial court found that, at sentencing, defendant admitted that the $497,000 cash found by investigators constituted proceeds that he derived through his corrupt activity. The evidence relied on by the trial court included defendant's admission, as well as testimony from Lieutenant Charles H. Horner, Southern Ohio Law Enforcement Task Force, who testified concerning the search and seizure of the cash. We believe that this amounts to "some competent and credible evidence." Myers v. Garson, supra.
 {¶ 43} The CSEA's sole assignment of error is overruled.
 III.Conclusion {¶ 44} We find that the lower court relied on some competent, credible evidence in its judgment concerning the CSEA's interest in the property during the forfeiture hearing. The CSEA waived the argument that defendant's children had a lien on the property, if any lien existed. Moreover, because the CSEA could not challenge the forfeiture itself, but could only assert its interest, we find no error in the trial court's determination.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the SCIOTO COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J., and Kline, J.: Concur in Judgment Only.
[1] The following parties also filed a petition claiming an interest in the forfeited property: Jeri Fisher, Denver Nelson, and St. John's Mercy Hospital. The lower court found that none of the petitioners could show that their interest in the forfeited property was superior to defendant's at the time of his pattern of corrupt activity. The court found that defendant merely had an obligation to pay some of these petitioners. However, none of these parties appealed.
[2] As an aside, we note that the idea of extending a personal property lien to money in the form of cash is troublesome. While cash is "personal property" (i.e., it cannot be categorized as real property), we doubt that cash can be subject to a lien in the sense the CSEA is attempting to argue. Cash has several characteristics which distinguish it from other forms of money (i.e, checks, deposit accounts, or accounts payable) that can be subject to liens. Cash is the most liquid of assets, requiring only the transfer of possession to transfer title. This characteristic alone demonstrates the absurdity of attaching a lien to cash: suppose defendant's children did have a lien on his cash. Would subsequent holders of the cash ever be on notice of the children's lien, even if that lien was recorded? Most likely the answer is no. Moreover, we do not know that such a lien could be recorded. Would the lien holder record each bill's serial number? Such an idea is unfathomable, since people who conduct affairs in the ordinary course of business do not research liens when accepting cash as payment for an obligation (such a task would be too burdensome on our system of commerce and defeat the purpose behind the liquidity of cash). This demonstrates how such a lien would be of no effect. Allowing defendant's children to have a lien on this cash would destroy the free-negotiability characteristic of cash.